# United States Court of Appeals
## For the First Circuit

No. 19-1763

UNITED STATES OF AMERICA,

Appellee,

v.

WALLY IRIZARRY-SISCO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Pedro A. Delgado Hernández, U.S. District Judge]

Before

Barron, Chief Judge,
Howard, Circuit Judge,
and McAuliffe,* District Judge.

Michael C. Bourbeau, with whom Bourbeau & Bonilla, LLP was on brief, for appellant.
Antonio L. Pérez-Alonso, Assistant United States Attorney, with whom Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, and W. Stephen Muldrow, United States Attorney, were on brief, for appellee.

November 22, 2023

---

* Of the United States District Court for the District of New Hampshire, sitting by designation.

**HOWARD**, **Circuit Judge**.  After a six-day trial, a jury found Wally Irizarry-Sisco guilty of one count of transportation of a minor with the intent to engage in criminal sexual activity, in violation of 18 U.S.C. § 2423(a).  On appeal, Irizarry seeks to vacate the verdict against him, based upon the assertedly erroneous admission of hearsay testimony and improper opinion testimony.  He also challenges the procedural and substantive reasonableness of his sentence.  Concluding that the contested testimony was properly admitted and that the sentence was procedurally and substantively reasonable, we affirm.

## I. BACKGROUND

Because we review the challenged evidentiary rulings using a balanced approach, "objectively viewing the evidence of record," we present the background facts in a similarly balanced manner.  United States v. Velazquez-Fontanez, 6 F.4th 205, 212 (1st Cir. 2021) (alteration omitted) (quoting United States v. Amador-Huggins, 799 F.3d 124, 127 (1st Cir. 2015)).  Many of the background facts are drawn from the closed-circuit-television trial testimony of the alleged victim, to whom we refer as Minor Y.[1]  We note when the facts are drawn from such testimony.

---

[1] The government also presented the testimony of the alleged victim's neighbor, her maternal aunt, and her older sister, among other witnesses.

At the time of the alleged incidents, Irizarry was a close friend to Minor Y's father and to her family. Irizarry and Minor Y's father were initially engaged in a business relationship, but a friendship developed thereafter.

From 2012 onward, Irizarry would visit the family "[a]lmost every day" either at the family's home or at their farm, both of which were located in Ponce, Puerto Rico. Minor Y's parents trusted Irizarry to the point that they would allow him to bring Minor Y on trips alone with him "[a]ll the time," and Minor Y explained that she "loved him like a grandfather." Minor Y further testified that she had known Irizarry since she was seven years old.

In 2015, the relevant offense conduct began. Minor Y was eleven years old at the time, Irizarry nearly sixty. During that year, Minor Y would see Irizarry "daily" at her family's home. Irizarry would give Minor Y gifts, including an electronic tablet and a volleyball. Frequently, he would take her -- alone -- in his gray Suzuki Vitara truck to shop at nearby stores, including Kmart and Walmart, as well as to a local bakery to buy sweets for her. On one such trip, Irizarry insisted on buying underwear -- "panties," according to Minor Y -- for Minor Y after he overheard Minor Y telling her mother that she needed some and despite her mother's objection to his making such a purchase.

- 3 -

On a weekend in March, despite telling Minor Y that he would drive her to Walmart, Irizarry unexpectedly drove her to the El Eden motel in the Juana Díaz suburb of Ponce. Minor Y testified that, as they drove in, Irizarry told her, "Put your seat back so that they don't see you because you're a minor." After parking his car, Irizarry got out and paid someone for a motel room equipped with a pole.[2] As was the motel's practice, a motel employee recorded the license plate of the car, along with the car's time of entry and exit. The manager of the motel testified that the motel's records indicated that a vehicle bearing Irizarry's license plate number was parked at the motel from 8:57 a.m. to 1:42 p.m. on March 22, 2015.

Minor Y testified that, while she and Irizarry were in the motel room, Irizarry -- among other inappropriate behavior -- touched her by her "woo," Minor Y's term for "vagina." She further testified that she thought Irizarry wanted to have sex with her, and she stated at trial that she "didn't like what he did." After they drove back to her family's home, Minor Y did not immediately tell anyone what had happened, as she was afraid that her father would hit her.

---

[2] It is disputed whether the person on duty was a man, as Minor Y testified, or a woman, as Irizarry claims. This dispute is not significant, as there was other corroboration at trial that Irizarry was at the El Eden motel during the relevant timeframe.

Minor Y testified that about a week later Irizarry took her to another motel, located near a boardwalk where they had just obtained food. She explained that the entrance of the motel had "some dolphins," "its name," and "some palm trees." Minor Y identified this second motel as the Marbella motel through photographs provided by the government and entered into evidence, although she did not explicitly identify the motel by name. She also testified in graphic detail about various sexual acts that Irizarry committed once inside the motel room, including that Irizarry ejaculated on Minor Y.

Relevant to one of Irizarry's claims of evidentiary error, one of Minor Y's neighbors, Wanda Pagan-Colon, testified that Minor Y and her sister were visiting Pagan's house when Minor Y thought she heard the sound of Irizarry's Suzuki Vitara outside. After Minor Y told Pagan and her sister to "listen," she "got very nervous. Her eyes got really big. She started moving her fingers, and she started looking everywhere when she said that she heard the sound of the car." Only about a week had passed since the Marbella motel incident. After hearing the truck, Minor Y's sister mentioned that their mother did not "want Old Man Wally at the house."

Seeing Minor Y's distress, Pagan asked if Irizarry had done anything to her. Pagan testified, over Irizarry's objections, that while Minor Y initially denied that anything had

happened, she was acting very nervous and unusual and so Pagan "insist[ed] and [she] asked [Minor Y], did he do anything to you?" Minor Y got even more nervous and said, "Yes, Ti-Ti."[3] Pagan then asked, "What did he do? Tell me what he did to you." Minor Y began to explain, but Pagan asked, "[W]hat he has between his legs, did he put it in your woo-woo?" Minor Y responded, "Yes, Ti-Ti." Pagan asked, "What else happened?" Minor Y reportedly told her, while crying, that "some white stuff came out." When Pagan later looked out of her window, she indeed saw Irizarry's truck parked across the street outside Minor Y's house. Irizarry argues on appeal that Pagan's testimony concerning Minor Y's statements was hearsay improperly admitted by the district court under the "excited utterance" exception. See Fed. R. Evid. 803(2).

Relevant to Irizarry's other claim of evidentiary error, Minor Y's aunt, Sarah Mercado-Alicea, testified at trial that she was at Minor Y's house one day in 2015 when Minor Y came home with Irizarry and complained to her that her "ass" hurt. Mercado told Minor Y, "Be careful that that old man hasn't done anything to you." In response, Minor Y, in Mercado's words, "smiled at me, but she smiled a very sort of sad smile" and shrugged her shoulders while making a facial gesture. Mercado testified that she interpreted Minor Y's response to "mean[] that the old man had

_____

[3] Minor Y typically referred to Pagan as "Ti-Ti," as she viewed her as an aunt ("tía" in Spanish).

- 6 -

hurt her."  Irizarry argues on appeal that this statement by Mercado was inadmissible as an opinion on an ultimate issue, see Fed. R. Evid. 704, and as an opinion on a witness's credibility.

## II. PROCEDURAL HISTORY

A grand jury charged Irizarry with three counts of transportation of a minor with the intent to engage in criminal sexual activity, in violation of 18 U.S.C. § 2423(a).[4]  One count was later dismissed pursuant to the government's motion.  Of the remaining two counts, the jury found Irizarry guilty on the count related to his alleged conduct in connection with the first motel, the El Eden motel, but it acquitted him on the count related to his alleged conduct in connection with the second motel, the Marbella motel.[5]

In its Presentence Investigation Report (PSR), the U.S. Probation Office calculated a base offense level of 28 for

---

[4] 18 U.S.C. § 2423(a) reads, "A person who knowingly transports an individual who has not attained the age of 18 years in interstate or foreign commerce, or in any commonwealth, territory or possession of the United States, with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, shall be fined under this title and imprisoned not less than 10 years or for life."  We have construed this section to apply to conduct occurring wholly within Puerto Rico.  See United States v. Cotto-Flores, 970 F.3d 17, 27-28 (1st Cir. 2020).

[5] The government suggests that it is likely Irizarry was acquitted on Count Two because, unlike with the El Eden motel, no one from the Marbella motel testified, nor did Minor Y explicitly identify the name of the motel, despite identifying photos of the Marbella motel as the second motel to which Irizarry brought her.

Irizarry's § 2423(a) conviction. The PSR then added a 2-level enhancement because the offense involved a sex act, an 8-level enhancement because the offense involved a minor under the age of twelve, and a 5-level enhancement because the offense involved a "pattern of activity involving prohibited sexual conduct." These enhancements resulted in a total offense level of 43, which -- based on Irizarry's criminal history category of I -- resulted in a guideline sentence of life imprisonment.

Irizarry objected to the PSR -- specifically to the 5-level enhancement for a "pattern of activity involving prohibited sexual conduct" -- on the basis that the jury had only found him guilty on one count and had acquitted him on the other. Therefore, he argued, no pattern of activity existed.

The district court adopted the PSR guideline calculations and considered the 18 U.S.C. § 3553(a) factors. The judge took into account Irizarry's age and his health problems, explicitly stating that "the Court has considered the effect that a prolonged sentence of imprisonment could have on Mr. Irizarry's health, as well as the Bureau of Prisons' ability to provide proper medical care to the defendant under custody." The judge sentenced Irizarry to 235 months' imprisonment, below the recommended guideline range of life imprisonment, writing, "Taking into consideration the totality of the record, a sentence below the

advisory guideline range is a sentence sufficient and not greater than necessary to promote the objectives of sentencing."

### III. EVIDENTIARY RULINGS

We review preserved challenges to the district court's evidentiary rulings for abuse of discretion. United States v. Spencer, 873 F.3d 1, 14 (1st Cir. 2017). An "[a]buse of discretion occurs when a relevant factor deserving of significant weight is overlooked, or when an improper factor is accorded significant weight, or when the court considers the appropriate mix of factors, but commits a palpable error of judgment in calibrating the decisional scales." United States v. Taylor, 848 F.3d 476, 484 (1st Cir. 2017) (quoting United States v. Jiménez, 419 F.3d 34, 43 (1st Cir. 2005)). Unpreserved challenges to the same are reviewed under the stricter standard of plain error. United States v. Belanger, 890 F.3d 13, 24 (1st Cir. 2018). This Court "will only vacate a jury verdict if an improperly admitted statement was not harmless -- that is, if its admission 'likely affected the outcome of trial.'" United States v. Upton, 559 F.3d 3, 15 (1st Cir. 2009) (quoting United States v. Castellini, 392 F.3d 35, 52 (1st Cir. 2004)).

The government contends that Irizarry did not preserve his evidentiary challenge as to Mercado's lay opinion testimony but concedes that he did as to Pagan's testimony regarding Minor Y's statements, which were admitted under the excited utterance

exception.  Irizarry contends in his reply brief that he properly preserved both.  Instead of wading into this issue, we assume, favorably for Irizarry, that our review is for abuse of discretion, rather than for plain error.  See Spencer, 873 F.3d at 14.  Nevertheless, neither of Irizarry's claims survives this standard of review.  Because we find below that the district court did not abuse its discretion in admitting the evidence, we need not conduct a harmlessness inquiry.

## A. Excited Utterance

Irizarry argues on appeal that the statements made by Minor Y to Pagan should have been excluded as hearsay and were improperly admitted by the district court under the excited utterance exception.  See Fed. R. Evid. 802, 803(2).  Pagan's testimony concerning the statements that Minor Y made to her were hearsay, see Fed. R. Evid. 801(c), and the government does not contend otherwise.  The excited utterance exception, however, exempts from the rule against hearsay a "statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused."  Fed. R. Evid. 803(2).

We have explained that a statement may be admitted under Rule 803(2) if it meets three requirements: (1) the declarant must experience a startling event; (2) the statement must be made while the declarant is subject to the influence of that event; and (3) the statement must relate to that event.  See United States v.

- 10 -

Collins, 60 F.3d 4, 8 (1st Cir. 1995) (citing United States v. Bailey, 834 F.2d 218, 228 (1st Cir. 1987)).  Irizarry argues that the statements were not the product of a startling event but instead were made in response to questioning by Pagan, who made an accusation against Irizarry in the presence of Minor Y and thereby planted the idea in Minor Y's mind.

The rationale underlying the excited utterance exception is that "excitement suspends the declarant's powers of reflection and fabrication, consequently minimizing the possibility that the utterance will be influenced by self interest and therefore rendered unreliable."  United States v. Taveras, 380 F.3d 532, 537 (1st Cir. 2004) (quoting United States v. Alexander, 331 F.3d 116, 122 (D.C. Cir. 2003)).  We also keep in mind, as this Court has noted previously, that "[p]rosecution of the crime of sexual abuse of a child poses special evidentiary problems.  The traditional hearsay exceptions are not drafted with child sex abuse prosecutions in mind."  United States v. Ellis, 935 F.2d 385, 393 (1st Cir. 1991) (quoting Daniel Capra, Innovations in Prosecuting Child Sexual Abuse, N.Y.L.J., November 9, 1989, at 3).

Under the first prong, which requires the declarant to have experienced a startling event, "courts seem to look primarily to the effect upon the declarant and, if satisfied that the event was such as to cause adequate excitement, the inquiry is ended."  United States v. Napier, 518 F.2d 316, 318 (9th Cir. 1975) (quoting

2 McCormick on Evidence § 297, at 705 (2d ed. 1972)); see also 2 McCormick on Evidence § 272 (8th ed. 2022) (same). Minor Y made the statements to Pagan, as the government explained to the district court at sidebar and to this Court in its briefing, after Minor Y heard the sound of Irizarry's truck pulling up to her family home, which was across the street from Pagan's home. To determine whether hearing this sound was a startling event for the purposes of Rule 803(2), we look at the effect that it had on Minor Y, whom Irizarry had allegedly assaulted twice in the previous two weeks.

We find persuasive the reasoning of our sister court in Napier, in which a victim of a violent assault, roughly eight weeks after the attack, was 're-excited' after being shown a newspaper photograph of her alleged attacker by her sister at home. 518 F.2d at 317. The victim's sister testified that the victim's "immediate reaction was one of great distress and horror and upset," and that the victim "pointed to it and she said very clearly, 'He killed me, he killed me.'" Id. The Ninth Circuit looked at the effect on the victim and found that the victim's "suddenly and unexpectedly" being "confronted with a photograph of her alleged assailant" was a sufficiently startling event to qualify under the rule. Id. at 318. While seeing a newspaper photograph was not in and of itself an event that might typically be considered 'startling,' its connection with a previous

- 12 -

startling event -- even one remote in time -- imbued it with that quality in light of the effect that it had on the victim.  See id.

Similarly, Pagan explained that after hearing the sound of Irizarry's truck, Minor Y "got very nervous.  Her eyes got really big.  She started moving her fingers, and she started looking everywhere when she said that she heard the sound of the car."  She also began to cry and continued to do so throughout her conversation with Pagan and her sister.  Minor Y testified at trial that when she heard the sound of Irizarry's truck, she knew "he was going to my house to get me."  Pagan went as far as to characterize Minor Y as "hysterical" during their conversation.

While hearing a truck is not in and of itself startling, when that truck is associated with the two recent sexual assaults that Minor Y had allegedly experienced, hearing that sound could have had the potential to 're-excite' Minor Y (and clearly seemed to do so).  The prospect of a third consecutive weekend of sexual abuse, when the second had been a dramatic escalation from the first, was undoubtedly frightening for Minor Y.  We cannot say, at least under the first prong, that the district court abused its discretion in determining that hearing Irizarry's truck was a startling event for Minor Y.

Analysis of the second prong -- that the statement be made while the declarant is subject to the influence of the startling event -- presents us with a closer call, but we do not

find that the district court abused its discretion on this basis either. Irizarry's primary argument against the admission of the statements at issue is that they were elicited by Pagan's questioning of Minor Y. It is true that Pagan testified that while Minor Y initially denied that Irizarry had done anything to her, after Pagan pressed her, asking whether Irizarry did anything to her, Minor Y got "more nervous," and ultimately responded, "Yes, Ti-Ti." Pagan next asked whether Irizarry put, "what he has between his legs . . . in your woo-woo?" Minor Y again answered, "Yes, Ti-Ti." Pagan then asked, "What else happened?" Minor Y reportedly told her that "some white stuff came out."

Irizarry contends, without citing any relevant authority on the point, that Minor Y's statements were inadmissible because they were made in response to Pagan's questions rather than spontaneously while under the influence of the startling event, as required by the second prong of the Rule 803(2) analysis. Irizarry also briefly contends that the statements are not admissible because they pertained to the assaults that "allegedly occurred at some unknown time," prior to Minor Y hearing Irizarry's truck.

Ultimately, the question "we must answer in determining whether a statement satisfies Rule 803(2)'s second condition is whether the statement was the product of reflective thought or the stress of excitement caused by the startling event." United States v. Magnan, 863 F.3d 1284, 1293 (10th Cir. 2017). In making

- 14 -

this determination, courts consider a variety of factors "includ[ing] (a) 'the amount of time between the event and the statement,' (b) 'the nature of the event,' (c) 'the subject matter of the statement,' (d) 'the age and condition of the declarant,' (e) 'the presence or absence of self-interest,' and (f) 'whether the statement was volunteered or in response to questioning.'" Id. at 1292 (quoting United States v. Pursley, 577 F.3d 1204, 1220 (10th Cir. 2009) (collecting cases and factors from across the federal circuits)).

"All other things being equal, a declarant's spontaneous statement surely is more likely to qualify as an excited utterance than a statement in response to questioning," but the presence of questioning is not dispositive. Id. at 1293. The other circuits to consider the question have agreed that the fact a statement was elicited by questioning is not an absolute bar on that statement's admissibility as an excited utterance. See Webb v. Lane, 922 F.2d 390, 394 (7th Cir. 1991) ("Statements made in response to questioning may qualify as an excited utterance."); Guam v. Cepeda, 69 F.3d 369, 372 (9th Cir. 1995) (explaining that the "fact that a statement is made in response to a question" is just one "aid to assist in deciding the ultimate question, whether the statement was the product of stress and excitement or reflective thought"); United States v. Iron Shell, 633 F.2d 77, 85 (8th Cir. 1980) ("Nor is it controlling that [the declarant's] statement was made in

response to an inquiry."); cf. State v. Dessinger, 958 N.W.2d 590, 602 (Iowa 2021) (noting in the context of a child's account of an assault, admitted under Iowa's Rule 803(2) analog, that "when the statements do not result from a rational dialogue, or the questioning from others is more general such as, 'What happened?' the statements will be more likely to fall under the excited utterance exception"); State v. Smith, 909 P.2d 236, 243 (Utah 1995) ("An excited utterance made in response to a somewhat leading question does not necessarily make the declaration inadmissible, although surely that fact must be carefully evaluated in determining admissibility.").

Similarly, when an "excited utterance goes beyond description of the exciting event and deals with past facts . . . it may tend to take on a reflective quality and must be more carefully scrutinized with respect to the second element." Murphy Auto Parts Co. v. Ball, 249 F.2d 508, 511 (D.C. Cir. 1957) (Burger, J.); see also Fed. R. Evid. 803(2) advisory committee's notes to 1972 proposed rules (citing Murphy, 249 F.2d 508). But like the fact that a statement was made in response to a question, the "fact that the utterance is not descriptive of the exciting event is [only] one of the factors which the trial court must take into account in the evaluation of whether the statement is truly a spontaneous, impulsive expression excited by the event." Murphy, 249 F.2d at 511.

It is in a "close case that the fact that our review is for abuse of discretion matters most." United States v. Spencer, 873 F.3d 1, 12 (1st Cir. 2017). "[W]e may not reverse a determination simply because we, if sitting as a court of first instance, would have weighed the relevant considerations differently." Negrón-Almeda v. Santiago, 528 F.3d 15, 21 (1st Cir. 2008); see also Murphy, 249 F.2d at 511 (noting that the evaluation of whether a statement is spontaneous "lies essentially with the trial court, and not unlike the observation of credibility" is "based in part, at least, on observation of the witness, the context of the statement and all surrounding circumstances"). Given the relevant factors, and the applicable abuse of discretion standard of review, we cannot say the district court committed a "palpable error of judgment," Taylor, 848 F.3d at 484, in concluding that Minor Y's statements were spontaneously made as a result of the stressful event.

The record reflects that Minor Y made the statement immediately after becoming extremely anxious when she heard the sound of Irizarry's truck. Indeed, Pagan testified that Minor Y was hysterical during their conversation. See Magnan, 863 F.3d at 1293 (noting that if a declarant's excitement level was "severe," then statements made in response to questioning could indeed qualify as excited utterances). And there is no indication from the record that there was a break in Minor Y's excited state

- 17 -

during the relevant period. While Pagan did not specifically testify as to the length of time between Minor Y's hearing Irizarry's truck and her statements at issue, the record "indicates that it is unlikely that a significant amount of time elapsed," as all the statements occurred in the course of a single conversation that directly followed the sound of Irizarry's truck. United States v. Moore, 791 F.2d 566, 572 (7th Cir. 1986).

We are also mindful of the special evidentiary problems associated with child sexual abuse. As this Court has noted previously, statements like these from young children like Minor Y are in many ways sui generis. Ellis, 935 F.2d at 393. Additionally, nothing in the record suggests that Minor Y had previously discussed or been questioned about Irizarry's assaults, and Irizarry has not identified a motive on the part of Minor Y to fabricate what are undoubtedly extreme allegations. These factors also support the District Court's conclusion that Minor Y's statements, while they came in response to questions about past events rather than the sound of the truck itself, were the result of excitement. See Murphy, 249 F.2d at 511.

There remains the question whether the district court abused its discretion in determining that -- under Rule 803(2)'s third prong -- the statements related to the event. "Relating to" an event under Rule 803(2) is markedly broader than "describing or explaining" an event under the directly adjacent Rule 803(1)

exception, which governs present sense impressions.  See United States v. Boyce, 742 F.3d 792, 798 (7th Cir. 2014).  The relation requirement encompasses those situations in which the "subject matter of the statement is such as would likely be evoked by the event."  Id. at 799 (quoting 4 Weinstein's Federal Evidence ¶ 803(2)[01] (1985)).  Minor Y's statements, while they do not describe or explain the sound of Irizarry's truck, are clearly related to hearing that sound.  For Minor Y, this was the vehicle that conveyed her to two sexual assaults, and it was now coming for her a third time.  Appellant's argument that Minor Y's statements had no relation to the event of hearing Irizarry's truck is simply without merit, given the broad construction of the relation requirement in the Federal version of Rule 803(2).  See Murphy, 249 F.2d at 511.

"Thus, there was a sufficient basis for the [district] court to have found that each of the conditions necessary for the application of the excited utterance exception was met."  United States v. Bailey, 834 F.2d 218, 228 (1st Cir. 1987) (finding no abuse of discretion by the district court).  Having carefully addressed each of the three prongs, we hold that the district court did not abuse its discretion in admitting Minor Y's statements to Pagan.[6]

---

[6] We also need not wade into the thornier question of whether, as the government alternatively proposes, the alleged sexual abuse

## B. Lay Opinion Testimony

Irizarry also argues on appeal that Mercado's testimony -- that she interpreted Minor Y's shrug, facial gesture, and sad smile to "mean[] that the old man had hurt her" -- was not admissible as lay opinion testimony because it offered an opinion as to an ultimate fact, in violation of Rule 704, as well as to the credibility of the victim. Fed. R. Evid. 701, 704.

Lay opinion testimony is limited to opinions "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. A lay opinion will fail the second "helpfulness" requirement if "the jury can readily draw the necessary inferences and conclusions without the aid of the opinion." United States v. Sanabria, 645 F.3d 505, 515 (1st Cir. 2011) (quoting Lynch v. City of Boston, 180 F.3d 1, 17 (1st Cir. 1999)). We afford the district court "considerable discretion" in deciding whether lay

itself, occurring a week or more prior to the statements at issue, was startling for the purposes of Rule 803(2). See, e.g., United States v. Taveras, 380 F.3d 532, 537 (1st Cir. 2004) ("The time lapse in most excited utterance cases is usually a few seconds or a few minutes. In extreme circumstances, we have even accepted a delay of a few hours." (citations omitted)). But see United States v. Shoup, 476 F.3d 38, 43 (1st Cir. 2007) ("[T]he time-lapse delimitation on an 'excited utterance' . . . is by no means a bright-line test . . . .").

opinion testimony is admissible under Rule 701.  United States v. Belanger, 890 F.3d 13, 25 (1st Cir. 2018) (quoting United States v. Valdivia, 680 F.3d 33, 51 (1st Cir. 2012)) (explaining that such discretion stems from the consideration that "a district court has a vantage point far superior to our own when it comes to the happenings and details of a particular case").

Mercado's testimony satisfies the three requirements of Rule 701 -- and on appeal, Irizarry does not specifically argue that any of the requirements are not met.  As a close relative of Minor Y who was directly observing her relevant non-verbal expressions, Mercado needed no specialized knowledge to form an opinion that was rationally based on her perception of Minor Y's expressions.  Moreover, her testimony was helpful to the jury in interpreting what Minor Y meant by the combination of her shrug, facial gesture, and sad smile, in a way that the jurors would not necessarily be well-equipped to do themselves, as they were not in the room at the time, nor were they intimately aware of Minor Y's mannerisms and non-verbal expressions in the way that a close relative might be.  See United States v. Campos Flores, 945 F.3d 687, 709 (2d Cir. 2019) ("The Rule allows a lay opinion that 'affords the jury an insight into an event that was uniquely available to an eyewitness.  In this respect, the Rule recognizes the common sense behind the saying that, sometimes, "you had to be there."'" (quoting United States v. Garcia, 413 F.3d 201, 212 (2d

Cir. 2005))). Mercado had interacted with Minor Y on numerous occasions in the past; based off her prior experiences with Minor Y, she held a unique insight into the meaning of Minor Y's expressions, insight which she accordingly shared with the jury. Mercado's testimony is the type of opinion encompassed within Rule 701.

As to Irizarry's Rule 704 argument, that rule of evidence makes clear that an "opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). Mercado's opinion did not address Irizarry's mental state -- which would have been impermissible under the plain text of Rule 704(b) -- and instead merely indicated that Irizarry had "hurt" Minor Y, not that Irizarry had unlawfully transported Minor Y with the intent to commit a criminal sexual act, as required by 18 U.S.C. § 2423(a). That Irizarry "hurt" Minor Y does not necessarily implicate sexual activity -- it could implicate solely, for example, bodily injury or emotional harm -- and thus the opinion did not go to the ultimate issue of guilt on the relevant count. Put in other words, "it is not even the ultimate issue in the case, but only one of the subordinate issues of fact bearing upon the ultimate issue." Mutual Life Ins. Co. v. Frost, 164 F.2d 542, 548 (1st Cir. 1947).

As to Irizarry's contention that Mercado's opinion testimony went to the credibility of Minor Y, the sole case from

our circuit that Irizarry cites in this section, <u>United States</u> v. <u>Shay</u>, 57 F.3d 126, 131 (1st Cir. 1995), actually took a different view of the Eighth Circuit case from which Irizarry quotes, <u>Bachman</u> v. <u>Leapley</u>, 953 F.2d 440, 441 (8th Cir. 1992). In <u>Shay</u>, we rejected the argument that cases like <u>Bachman</u> required the wholesale exclusion of any testimony concerning witness credibility, and we instead explained that these cases stood for the "more limited proposition" that testimony that "another witness is lying or telling the truth is ordinarily inadmissible." <u>Shay</u>, 57 F.3d at 131 (addressing expert opinion testimony). In any event, Mercado's opinion testimony at issue did not go to Minor Y's credibility, much less to the more limited question of whether Minor Y was lying or telling the truth. Applying the standard of review more favorable to Irizarry, we nonetheless hold that the district court did not abuse its discretion in admitting Mercado's opinion testimony.

## IV. SENTENCING

Irizarry also appeals his sentence of 235 months' imprisonment. We review a district court's sentence for reasonableness, which involves both a procedural and substantive inquiry. See <u>United States</u> v. <u>Politano</u>, 522 F.3d 69, 72 (1st Cir. 2008). "[W]e evaluate claims of unreasonableness in light of the totality of the circumstances." <u>United States</u> v. <u>Flores-Machicote</u>, 706 F.3d 16, 20 (2013) (citing <u>Gall</u> v. <u>United States</u>,

552 U.S. 38, 51 (2007)).  We conclude that Irizarry's sentence was procedurally and substantively reasonable, and therefore affirm the district court's sentence.

## A. Procedural Reasonableness

"In assessing the procedural reasonableness of a sentence, we apply a 'multifaceted' abuse of discretion standard in which 'we apply clear error review to factual findings, de novo review to interpretations and applications of the guidelines, and abuse of discretion review to judgment calls.'"  United States v. Reyes-Torres, 979 F.3d 1, 7 (1st Cir. 2020) (quoting United States v. Nieves-Mercado, 847 F.3d 37, 42 (1st Cir. 2017)).  The Supreme Court has explained that procedural errors considered significant under this assessment include "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence -- including an explanation for any deviation from the Guidelines range."  Gall, 552 U.S. at 51.

No such errors are found in Irizarry's case.  Irizarry primarily argues on appeal that the district court improperly applied the 5-level enhancement for a "pattern of activity involving prohibited sexual conduct" because the jury acquitted Irizarry of Count Two, precluding the finding of such a pattern. However, "[a]s the law now plainly stands, 'acquitted conduct, if

proved by a preponderance of the evidence, . . . may form the basis for a sentencing enhancement.'" United States v. Alejandro-Montañez, 778 F.3d 352, 361 (1st Cir. 2015) (omission in original) (quoting United States v. Gobbi, 471 F.3d 302, 314 (1st Cir. 2006)).[7] The jury's acquittal of Irizarry on Count Two, on the other hand, was based on a beyond-a-reasonable-doubt standard. Irizarry's challenge to the enhancement amounts to an allegation that the district court's factual findings on Count Two lack a sufficient evidentiary basis, and here Irizarry cannot overcome the high hurdle of clear error review and the deference we accord the district court's factual findings -- and we see no reason to disturb such findings.

The district court judge observed all of Minor Y's testimony concerning the two alleged sexual assaults, as well as the testimony of her neighbor and family members. That the judge, by a preponderance of the evidence, credited her version of events does not rise to the level of clear error. See United States v. Cortez-Vergara, 873 F.3d 390, 393 (1st Cir. 2017) (noting that "a

_____

[7] The United States Sentencing Commission has proposed a Guidelines amendment that would prohibit judges from considering certain forms of acquitted conduct for sentencing purposes. See 88 Fed. Reg. 7180, 7224-7225 (Feb. 2, 2023). But we need not consider whether the amendment pertains to Irizarry's acquittal because the amendment remains pending. Carlton W. Reeves, Chair, U.S. Sentencing Comm'n, Remarks at the Public Meeting of the United States Sentencing Commission (April 5, 2023) ("We intend to resolve questions involving acquitted conduct [in 2024].").

district court's choice between multiple permissible inferences cannot be clearly erroneous"); United States v. Platte, 577 F.3d 387, 392 (1st Cir. 2009) (explaining that, under the clear error standard, "we must honor such findings 'unless, on the whole of the record, we form a strong, unyielding belief that a mistake has been made'" (quoting Cumpiano v. Banco Santander P.R., 902 F.2d 148, 152 (1st Cir. 1990))). Finding no clear error committed by the district court (and no overall abuse of discretion), we hold that Irizarry's sentence was procedurally reasonable.

## B. Substantive Reasonableness

We review a preserved challenge to substantive reasonableness under an abuse of discretion standard. See United States v. Murchison, 865 F.3d 23, 28 n.9 (1st Cir. 2017). "A sentence is substantively reasonable so long as the sentencing court has provided a 'plausible sentencing rationale' and reached a 'defensible result.'" United States v. Sayer, 916 F.3d 32, 39 (1st Cir. 2019) (quoting United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008)).

The district court provided an ample and plausible sentencing rationale and discussed explicitly the factors that Irizarry complains were ignored or overlooked. Irizarry raised each of these considerations at sentencing and simply rehashes them on appeal. The district court adopted the PSR guideline calculations and considered the § 3553(a) factors. The judge

considered Irizarry's age and his health problems, explicitly stating that "the Court has considered the effect that a prolonged sentence of imprisonment could have on Mr. Irizarry's health, as well as the Bureau of Prisons' ability to provide proper medical care to the defendant under custody."

There was no error, much less an abuse of discretion, in not weighing Irizarry's age and health issues as much as Irizarry would have liked, and we decline to reweigh the sentencing factors on appeal. See United States v. Rodríguez-Caraballo, 817 F.3d 391, 393 (1st Cir. 2016). The district court's downward variance from life imprisonment to 235 months' imprisonment resulted in a sentence that was, in the court's words, "sufficient and not greater than necessary." See United States v. Floyd, 740 F.3d 22, 39-40 (1st Cir. 2014) ("When, as in this case, a district court essays a substantial downward variance from a properly calculated guideline sentencing range, a defendant's claim of substantive unreasonableness will generally fail."). That the sentence practically amounts to a life sentence, as Irizarry complains, does not sway our decision. See United States v. Bunchan, 580 F.3d 66, 73 (1st Cir. 2009).

## V. CONCLUSION

In light of the foregoing, we **affirm** Irizarry's conviction and sentence.