# United States Court of Appeals
## For the First Circuit

No. 24-1609

UNITED STATES OF AMERICA,

Appellee,

v.

MISAEL FABIAN MEDINA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise J. Casper, U.S. District Judge]

Before

Rikelman and Aframe, Circuit Judges,
and Elliott,* District Judge.

Jamesa J. Drake, with whom Drake Law LLC was on brief, for
appellant.

Donald C. Lockhart, Assistant United States Attorney, with
whom Leah B. Foley, United States Attorney, was on brief, for
appellee.

September 9, 2025

_____
* Of the District of New Hampshire, sitting by designation.

**RIKELMAN, Circuit Judge.** Misael Fabian Medina challenges his convictions for attempted sex trafficking of a child and attempted coercion and enticement of a child to engage in prostitution. According to Medina, because of his limited English language skills, he did not understand that he was arranging to have sex with a child, rather than an adult. He argues that the district court prejudiced his defense at trial by improperly excluding an exculpatory out-of-court statement, which he asserts fell under the excited utterance exception to the rule against hearsay. He also challenges two of the district court's jury instructions -- one concerning interstate commerce and another concerning the difference between motive and intent -- as interfering with the role of the jury. Concluding, as we do, that none of the district court's rulings were improper, we reject Medina's arguments and affirm his convictions.

## I. BACKGROUND

### A. Relevant Facts[1]

Medina, who is a native Spanish speaker with limited English language skills, responded to an online advertisement for

---

[1] Because Medina does not challenge the sufficiency of the government's evidence against him at trial, we present the facts in a "'balanced' manner" and view the record "objectively." United States v. Soto-Sanchez, 138 F.4th 81, 83 (1st Cir. 2025) (quoting United States v. Velazquez-Fontanez, 6 F.4th 205, 212 (1st Cir. 2021)).

commercial sex in November 2022. After texting the phone number in the advertisement and coordinating a time, location, and price for the sex transaction, Medina drove to the appointed hotel -- a Courtyard Marriott -- with $200, his cell phone, and a box of Trojan-brand condoms. Meanwhile, federal agents were lying in wait at the meet-up spot.

Unknown to Medina, an undercover federal agent had posted the fake advertisement and responded to his inquiry. The agent had designed the online posting to suggest an offer of sex with children while not triggering the host website's policies against pedophilia. For example, the individuals in the posting's photos appeared to be over eighteen years old but were labeled "age 99," which the government claimed was a well-known strategy for suggesting the possibility of sex with children to individuals seeking commercial sex transactions. When Medina texted the undercover agent using his cell phone, she explained that she had "2 young girls ready to play" and that "Bri is 14 yo and lots of fun n Jes is 12 and super sweet." She also indicated that Jes was a "hispanic mix." The agent eventually asked Medina which girl he was interested in, and, after some apparent miscommunication, Medina replied "Spanish" and finally "Jes love." Immediately afterwards, he also texted: "Tight pussy love." After Medina arrived at the hotel, he briefly spoke with the undercover agent

in the parking lot, received a hotel room key from her, confirmed he had $200 in cash, and was promptly placed under arrest.

When Medina was booked about thirty minutes after his arrest, an officer informed him in Spanish that he was charged with "paying for sex with a minor under fourteen years old." Medina responded, "with a minor under fourteen years old?" The officer confirmed, "yes, sir" and "those are the charges." Medina then replied that he "never, never spoke to any minor."

After another thirty minutes had elapsed, the officers initiated a post-arrest interview. During the interview, which was conducted in Spanish and lasted about four minutes, Medina told the officers that he believed he had arranged for sex with an adult woman and that he never would have shown up at the hotel had he believed that a minor would be involved.

## B. Procedural History

A grand jury indicted Medina on two counts: attempted sex trafficking of a child, see 18 U.S.C. §§ 1591, 1594(a), and attempted coercion and enticement of a child to engage in prostitution, see 18 U.S.C. § 2422(b). Medina pleaded not guilty. His first trial resulted in a hung jury, but his second trial resulted in convictions on both counts.

The defense's theory (at both trials) was that Medina did not intend to have sex with a minor. Instead, the defense argued that Medina had intended to engage in commercial sex with

- 4 -

an adult. Medina presented evidence, including through a language expert, that he had limited English skills and argued that he did not understand the government agent's text messages about Jes and Bri. He insisted that he had intended to have sex with the sender of the text messages -- that is, the woman who met Medina outside the Marriott and who turned out to be a federal agent.

In support of his defense, Medina filed a motion at his first trial seeking to admit both (1) his booking statement that he "never spoke to any minor" and (2) his post-arrest interview statements that he did not intend to have sex with a minor. Medina and the government agreed that these statements were hearsay, but Medina argued that they were nonetheless admissible under Federal Rule of Evidence 803(2), which creates an exception to the hearsay rule for "excited utterances." According to Medina, he experienced a "startling event" when, during booking, he was informed that he was charged with paying for sex with a minor. The government objected to the admission of both sets of statements.

The district court granted Medina's motion in part and denied it in part. The court held that the booking statement, which came just after Medina learned of the charges against him, qualified as an excited utterance under Rule 803(2). But it concluded that the post-arrest interview statements, which came approximately thirty minutes later, did not. At Medina's second

trial, he did not specifically seek reconsideration of the court's decision to exclude the interview statements.

Medina also challenged several jury instructions at his first trial. To begin, he objected to an instruction differentiating between motive and intent because "motive [was] not really an issue" in his case and therefore, in his view, the instruction was confusing. The district court overruled this objection, explaining that the instruction addressed "a layperson's understanding of intent and knowledge versus motive."

Next, Medina objected to the district court's instruction on the interstate commerce element of both of the crimes with which he was charged.[2] He pointed out that the court's proposed instruction appeared to single out, for instance, a "cellular phone" or "hotel" as a "means" or "facilit[y]" of interstate commerce. Medina argued that this instruction improperly "supplie[d] the evidence that's already in the record and use[d] that as an example." In response to Medina's objection, the court said it would consider replacing these terms in its instruction with more generic language, such as "communication systems" or "entities that serve interstate or foreign travelers." Medina replied that he "th[ought] [he] would accept generic terms

---

[2] Medina appeals only the district court's interstate commerce instruction as to Count One, attempted sex trafficking of a child.

- 6 -

like 'entity,' things of that nature."  Ultimately, the court made some changes to the instruction -- such as using "entit[y] that serviced interstate or foreign travelers" instead of "hotel" and "telephone" instead of "cellular phone" -- but it declined to replace "telephone" or "internet" with "communication systems," concluding that this last phrase could be "misinterpreted."  After issuing this ruling, the court asked Medina whether he needed to be heard, and he replied that he did not.

Medina's second trial took place eight months later.  During that trial, the district court read to the jury several stipulations by the parties related to the interstate commerce element.  Specifically, Medina and the government stipulated that "the Courtyard by Marriott Hotel . . . is a company that was engaged in interstate and foreign commerce."  They also stipulated that "Verizon Wireless," which was Medina's cellular service provider, "is a company that was engaged in interstate and foreign commerce."  Finally, they stipulated that "Dwight & Church," which produces "Trojan brand condoms[,] . . . is a company that was engaged in interstate and foreign commerce."

As his second trial progressed, Medina attempted to re-urge his objections to the jury instructions.  At the charge conference, he said that he was "renew[ing] [his] objections that [he] made at the first trial about the . . . elements of the offense . . . that[] [were] reflected on the record at the first

- 7 -

trial." The district court told Medina that it could not "remember exactly what [the objections] were," but that he should "preserve the record in the way [he thought he] need[ed] to." Medina replied that this was his attempt to "preserv[e] the record . . . given the fact that we've already gone through this." The court replied, "Understood, understood."

At the end of the second trial, the district court provided the instructions that Medina challenges in this appeal. The instructions were substantially unchanged from the first trial. As to motive, the court instructed:

> The question of whether someone committed an act knowingly or intentionally should never be confused with the motive for an act. Motive is what prompts a person to act or to fail to act. The concept of motive is different than the concept of knowledge or intent. Intent and knowledge refer only to the state of mind with which the act is done or omitted. The government is never required to prove motive. For purposes of determining innocence or guilt, therefore, the motive of a defendant is immaterial, except insofar as evidence of motive may aid in the determination of his state of mind or his intent.

As to the interstate commerce element of Count One, attempted sex trafficking of a child, the court instructed:

> In determining whether the defendant's conduct was in or affecting interstate or foreign commerce, you may consider whether the defendant used a means or facility of interstate or foreign commerce, such as a telephone or the internet, an entity that serviced interstate or foreign travelers, or

the purchase of items that were manufactured outside of Massachusetts.

After the court instructed the jury, it asked whether the parties needed to be heard. Medina replied that he would "object to the instructions that were given and offer the instructions that we gave at the first trial, understanding the [c]ourt's ruling on this issue." The court replied, "Understood. Preserved."

The jury convicted Medina on both counts. Medina timely appealed.

## II. DISCUSSION

Before us, Medina challenges both the exclusion of his post-arrest interview statements and two of the district court's jury instructions. The government argues that Medina failed to preserve his claims, and thus we must review those claims under the particularly onerous plain error standard. We conclude that even under the friendlier abuse of discretion standard, none of Medina's arguments carry the day.

### A. Exclusion of Post-Arrest Interview Statements

We review preserved challenges to evidentiary rulings for abuse of discretion. See United States v. Irizarry-Sisco, 87 F.4th 38, 44 (1st Cir. 2023), cert. denied, 144 S. Ct. 1083 (2024). "An '[a]buse of discretion occurs when a relevant factor deserving of significant weight is overlooked, or when an improper factor is accorded significant weight, or when the court considers the

appropriate mix of factors, but commits a palpable error of judgment in calibrating the decisional scales.'" Id. (quoting United States v. Taylor, 848 F.3d 476, 484 (1st Cir. 2017)). Under this umbrella standard, we evaluate questions of law de novo and questions of fact for clear error. See United States v. Burgos-Montes, 786 F.3d 92, 114 (1st Cir. 2015). If a challenge is unpreserved, we apply "the stricter" plain error standard. Irizarry-Sisco, 87 F.4th at 44. Either way, we will overturn a jury's verdict only if an evidentiary error "likely affected the outcome of trial." Id. (quoting United States v. Upton, 559 F.3d 3, 15 (1st Cir. 2009)).

Medina argues that the district court abused its discretion by excluding his post-arrest interview statements denying that he intended to have sex with a minor. Although he does not challenge the court's conclusion that the statements were hearsay, he insists that the statements qualified as excited utterances under Rule 803(2), an exception to the hearsay rule. Specifically, Medina sought admission of his statements to officers, during the four-minute interview after his arrest, that he "supposed [he was texting] an adult" and "never imagined" that he was going to "meet[] up" with a minor. According to Medina, the exclusion of these statements destroyed his defense. As he sees it, whether he intended to have sex with a minor was the only disputed factual issue at trial, and the court's ruling prevented

the jury from hearing directly from him about what was in his mind during his interactions with the federal agent.

Rule 803(2) provides an exception to the rule against hearsay for "statement[s] relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Fed. R. Evid. 803(2). To determine whether a declarant was "under the stress of excitement"[3] when making a statement, courts may consider several factors. These factors include "(a) the amount of time between the [startling] event and the statement, (b) the nature of the event, (c) the subject matter of the statement, (d) the age and condition of the declarant, (e) the presence or absence of self-interest, and (f) whether the statement was volunteered or in response to questioning." Irizarry-Sisco, 87 F.4th at 47 (cleaned up) (citation omitted).

The district court carefully analyzed Medina's arguments under Rule 803(2) and made a number of rulings in his favor. For example, it determined that, contrary to the government's

_____

[3] At oral argument, the parties sparred over whether this determination is a factual one, which we should review only for clear error. As we have explained, although we evaluate the district court's underlying factual findings (such as the amount of time that elapsed following the startling event) for clear error, we review its application of law to fact de novo and its ultimate determination whether to admit or exclude the challenged evidence for abuse of discretion. See Irizarry-Sisco, 87 F.4th at 46.

position, Medina experienced a startling event when the officers notified him at booking that he was charged with sex with a minor. And the court allowed into evidence Medina's immediate response after learning that was the charge against him, which permitted him to rely on that "excited utterance" in presenting his defense to the jury during his opening statement and closing argument. But the court also determined that Medina was no longer under the stress of that startling event nearly thirty minutes later when the officers questioned him during a four-minute interview, after providing him with <u>Miranda</u> warnings reminding him, for example, of his right to remain silent. We conclude that Medina has not pointed to any abuse of discretion in the district court's analysis of the excited utterance rule.

Medina insists that several of the factors under the Rule 803(2) analysis "militate strongly in [his] favor," and thus the district court abused its discretion in concluding that he was no longer under the stress of the startling event by the time of the interview. He contends that the nature of the event, the subject matter of his statements, and his condition all supported admission. As Medina points out, while in federal custody, he learned that he was charged with a serious and especially stigmatizing offense, which would imperil his immigration standing and his ability to remain in the United States. All this amounted

to a shocking event, he claims, and he suffered severe stress as a result.

But the district court largely accepted Medina's arguments on these points. Indeed, it was these very facts that led the court to conclude that Medina experienced a startling event when he learned the charges against him at booking.

As to the last factors under Rule 803(2) for determining whether an individual was still "under the stress of excitement," the presence of self-interest and whether the statements were made in response to questioning, Medina concedes that these factors weigh against him. As he recognizes, it was clearly in his interest to assert that he never intended to have sex with a minor, and the statements he identifies were made in the middle of a four-minute interview by federal officers, in response to their questions.

Medina's argument on appeal thus seems to hinge on his claim that the district court went astray by focusing too much on the thirty-minute time gap as the most important factor in its analysis under Rule 803(2). According to Medina, the amount of time between the startling event and his statements weighed in his favor because "nothing in that interregnum calmed [him]." Further, Medina relies heavily on one of our previous decisions, United States v. Cruz, where we upheld a district court's decision to admit under the excited utterance exception a statement made by a

defendant four hours after a startling event. See 156 F.3d 22, 30 (1st Cir. 1998).

But Medina acknowledges that "the time lapse in most excited utterance cases is usually a few seconds or minutes." And the facts of Cruz were quite different. In that case, the declarant had been physically assaulted by her intimate partner before escaping to a shelter and speaking to an employee at the shelter. See id. at 25, 30. Although four hours elapsed between the end of her assault and the time she fled to the shelter, the evidence also suggested that the declarant was trapped in her apartment "until some period after" the attack ended. Id. at 30. Thus, although in some circumstances a declarant may remain under the influence of an exciting event more than thirty minutes after it takes place, the evaluation of whether the Rule 803(2) exception applies remains a heavily fact-dependent one.

Here, the district court determined that Medina was not under the influence of the startling event thirty minutes later, and Medina offers no sound basis to question this determination. See Irizarry-Sisco, 87 F.4th at 47 (explaining that the determination of whether a declarant was under the stress of excitement "'lies essentially with the trial court, and not unlike the [determination] of credibility' is 'based in part, at least, on observation of the witness, the context of the statement[,] and all surrounding circumstances'" (quoting Murphy Auto Parts Co. v.

Ball, 249 F.2d 508, 511 (D.C. Cir. 1957))).  The court made clear that it was not treating the timing factor as a bright line rule: it expressly noted that "[t]here's certainly no set time" interval for an excited utterance but that "in this case" the exception did not apply.  And to cinch matters, the court's decision accorded with the purpose of Rule 803(2).  "The rationale underlying the excited utterance exception is that 'excitement suspends the declarant's powers of reflection and fabrication, consequently minimizing the possibility that the utterance will be influenced by self[-]interest and therefore rendered unreliable.'"  Id. at 45 (quoting United States v. Taveras, 380 F.3d 532, 537 (1st Cir. 2004)).  Medina learned that he was charged with a serious crime and then thirty minutes elapsed, providing him with both the time and the opportunity to prepare an explanation for his actions. The district court did not abuse its discretion in concluding, on these facts, that Medina could not invoke the Rule 803(2) exception because there was a strong possibility that his statements were "influenced by self-interest" and "therefore rendered unreliable." Id. (cleaned up).[4]

---

[4] Because we conclude that the district court did not abuse its discretion in making this ruling, we do not reach the question of whether any error in excluding these statements was nevertheless harmless.

## B. Jury Instructions

Next up are Medina's challenges to the district court's jury instructions. When a defendant has preserved a jury instruction challenge, "we review whether the district court's instructions contained an error of law de novo, but 'we review for abuse of discretion whether the instructions adequately explained the law or whether they tended to confuse or mislead the jury on the controlling issues.'" United States v. Coleman, ___ F.4th ____, 2025 WL 2027851, at *33 (1st Cir. July 21, 2025) (citation omitted). Like other legal challenges, constitutional challenges to the instructions are reviewed de novo. See United States v. Rodríguez, 162 F.3d 135, 144 (1st Cir. 1998).

### 1. Interstate Commerce Jury Instruction

Medina first contends that the district court's interstate commerce jury instruction violated his Sixth Amendment rights. The government argues once again that Medina failed to preserve this claim and that plain error review therefore governs. But we need not address the preservation dispute. Medina's challenge fails either way because the district court did not err when it instructed the jury on this element of attempted sex trafficking.

To recap, the district court instructed the jury, in relevant part:

> In determining whether the defendant's conduct was in or affecting interstate or foreign commerce, you may consider whether the defendant used a means or facility of interstate or foreign commerce, such as a <u>telephone or the internet, an entity that serviced interstate or foreign travelers, or the purchase of items that were manufactured outside of Massachusetts</u>.

(Emphasis added.)  Medina points out that the government's evidence involved Medina's use of a telephone (Medina's cell), the internet, an entity that serviced interstate travelers (the Marriott), and items manufactured outside Massachusetts (Trojan condoms). Because the instruction offered these very "means" or "facilities" as examples, Medina insists that it impermissibly "culled the government's proof." And he asserts that the instruction "directed the jurors to find facts that they could have rejected," all in violation of the Sixth Amendment.  We disagree.

The Sixth Amendment to the U.S. Constitution enshrines a criminal defendant's right to a trial "by an impartial jury." U.S. Const. amend. VI.  Interpreting the scope of this Sixth Amendment right, we have explained that "a court may not step in and direct a finding of contested fact in favor of the prosecution 'regardless of how overwhelmingly the evidence may point in that direction.'"  <u>United States</u> v. <u>Rivera-Santiago</u>, 107 F.3d 960, 965 (1st Cir. 1997) (quoting <u>United States</u> v. <u>Argentine</u>, 814 F.2d 783, 788 (1st Cir. 1987)).  Thus, we have vacated convictions where, for example, the district court "effectively directed the jury to

consider only certain testimony that favored the government." United States v. Moffett, 53 F.4th 679, 685 (1st Cir. 2022) (citing Rivera-Santiago, 107 F.3d at 967).  In so doing, we have reaffirmed that "defendants [a]re entitled to have their theory of the case, as developed through their evidence, presented to the jury on an equal footing with the government's theory of the case."  Id. (alteration in original) (quoting Rivera-Santiago, 107 F.3d at 967).

We conclude that the interstate commerce instruction did not intrude upon Medina's Sixth Amendment rights.  First, the instruction did not reference any specific evidence in the record.  Instead, it addressed broad categories of evidence.  Nor did it require the jury to decide that those categories would in fact satisfy the interstate commerce element, because it merely instructed the jury that it "may consider" them.  (Emphasis added.)  And we see no other indication that the district court placed "'undue weight' on portions of the government's evidence" or directed the jury to make any finding.  Id. (quoting United States v. Almonte, 594 F.2d 261, 265 (1st Cir. 1979)).

Second, the instruction did not interfere with Medina's ability to present his theory of the case.  The charge did not concern any contested fact or conflicting evidence.  See Rivera-Santiago, 107 F.3d at 965 (explaining that a Sixth Amendment violation occurs when a court directs the "finding of [a] contested

fact" (emphasis added)).  To the contrary, Medina stipulated to many facts relevant to the interstate commerce question. Specifically, Medina and the government stipulated that Verizon Wireless, the Marriott hotel, and the company that produces Trojan-brand condoms were businesses engaged in interstate commerce.  To the extent that the jury's finding on the interstate commerce element inevitably followed from the district court's instruction, it did so because of the stipulations that Medina and the government had reached.[5]

Finally, Medina does not dispute that the instruction was an accurate statement of law.  See United States v. Smoot, 690 F.3d 215, 223 (4th Cir. 2012) ("It is elementary that a jury instruction is not flawed if it is a fair and accurate statement of law.").  As a result, we see no legal error by the district court or any improper interference with the jury's role.

### 2. Motive Jury Instruction

Medina also challenges the district court's jury instruction distinguishing motive from intent.  As a reminder, the district court instructed the jury:

> The question of whether someone committed an act knowingly or intentionally should never be confused with the motive for an act.  Motive is what prompts a person to act or to fail to act.  The concept of motive is different than

---

[5] Nonetheless, the district court was careful to avoid any reference to these stipulations in its instruction.

the concept of knowledge or intent. Intent and knowledge refer only to the state of mind with which the act is done or omitted. The government is never required to prove motive. For purposes of determining innocence or guilt, therefore, the motive of a defendant is immaterial, except insofar as evidence of motive may aid in the determination of his state of mind or his intent.

Medina argues that this instruction was improper because it was confusing and because it diminished the government's burden of proof, purportedly in violation of Medina's due process rights. According to Medina, "[m]otive and intent [were] interchangeable" in his case, and so the instruction "had the effect of telling the jurors that the crux of the case -- whether [Medina] intended sex with an adult or a child -- need not b[e] established beyond a reasonable doubt."[6]

We disagree with Medina on both counts. First, contrary to Medina's contention, intent and motive were neither interchangeable nor indistinguishable in his case. The government was not required to prove that Medina was motivated by the fact that Jes was a child, just that he arranged the sex transaction with knowledge of her age. This disputed fact was a crucial part of the trial because Medina had no history of sexual interest in children. Thus, in the government's closing argument, it explained

---

[6] Once again, the government insists that this challenge was not preserved. But as before, we will assume that Medina preserved this claim and move to the merits.

that it did not have to prove that when Medina "went on the internet that morning he was looking for a minor." Instead, it had to prove beyond a reasonable doubt that, after arriving at the Marriott, Medina acted intentionally with knowledge that he would be having sex with a minor. The jury instruction focused on this distinction. Medina's argument that an instruction distinguishing between motive and intent was an unnecessary distraction therefore fails.

Second, our review of the instructions as a whole confirms that they did not misinform the jury about the government's burden to prove Medina's mens rea (state of mind) beyond a reasonable doubt. See United States v. Royal, 100 F.3d 1019, 1026 (1st Cir. 1996) ("We consider the instructions as a whole; portions of it are not to be treated in isolation." (citation omitted)). The district court's instructions for both charged counts made perfectly clear that Medina's knowledge of Jes's age was a required element of each offense. The court explained that to convict Medina of attempted sex trafficking of a child, the jury had to find beyond a reasonable doubt that he "intended to entice . . . a person to engage in a commercial sex act" and that he "knew that the person had not attained the age of 14 years old." Similarly, it explained that to convict Medina of attempted coercion and enticement of a child to engage in prostitution, the jury had to find beyond a reasonable doubt that

he "intended to . . . entice . . . a person to engage in prostitution" and that he "knew that the person was under the age of 18 years old." Medina offers no record-based reason to conclude that the jury would have ignored these other express instructions, and thus we are bound to follow the well-established principle that juries are presumed to follow a court's instructions. See, e.g., United States v. González-Perez, 778 F.3d 3, 21 (1st Cir. 2015).

Finally, Medina also does not dispute that the motive instruction was an accurate statement of the law. Thus, we see no error and no violation of Medina's rights on this record.

## C. Cumulative Error

Medina argues that even if none of the district court's purported errors independently prejudiced him, the errors cumulatively require reversal. But because we discern no error by the district court, Medina's claim of cumulative error fails. See United States v. Stokes, 124 F.3d 39, 43 (1st Cir. 1997) (explaining that there can be no cumulative error effect where there has been no error).

## D. Pro Se Arguments

In his pro se brief, Medina contends that we should reverse his convictions because the government's sting operation was "outrageous" and "coercive," resulting in a "fabricated" crime. As the government points out, however, to the extent Medina

is asserting an entrapment defense, he did not present such a defense before the district court. See United States v. Muñoz-Franco, 487 F.3d 25, 54 (1st Cir. 2007) (explaining that an affirmative defense cannot be raised for the first time on appeal). And Medina has not articulated a cognizable constitutional challenge to the law enforcement tactics used here. See United States v. Díaz-Maldonado, 727 F.3d 130, 137 (1st Cir. 2013) ("Generally, we accept sting operations as an important tool of law enforcement. We expect innocent persons to decline such opportunities in the absence of some additional importuning by the government." (citations omitted)).

## III. CONCLUSION

For all these reasons, we **affirm** Medina's convictions.