# United States Court of Appeals
## For the First Circuit

No. 07-1534

UNITED STATES OF AMERICA,

Appellee,

v.

ANGEL ZAMORA CRUZ-DÍAZ,

Defendant, Appellant.

No. 07-1535

UNITED STATES OF AMERICA,

Appellee,

v.

JOSÉ ALFREDO AYALA-COLÓN,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Torruella, Lipez and Howard,
Circuit Judges.

Juan F. Matos De Juan for appellant José Alfredo Ayala-
Colón.

Raymond Rivera Esteves for appellant Angel Zamora Cruz-Díaz.
Mariana E. Bauzá, Assistant United States Attorney with whom
Rosa Emilia Rodriguez-Vélez, United States Attorney and Nelson
Pérez-Sosa, Assistant United States Attorney, Chief, Appellate
Division, were on brief for appellee.

————————————————

December 18, 2008

————————————————

**HOWARD, _Circuit Judge_.** After a six-day trial, a jury convicted Angel Zamora Cruz-Díaz (Cruz) and José Alfredo Ayala-Colón (Ayala) of conspiring to rob a federally insured bank, 18 U.S.C. § 371 (Count 1), aiding and abetting a bank robbery by use of a dangerous weapon, 18 U.S.C. § 2113(a), (d) (Count 2), and aiding and abetting the use of a firearm during and in relation to a crime of violence, here, a bank robbery, 18 U.S.C. § 924(c)(1)(A) (Count 3). The district court sentenced Cruz to 183 months' imprisonment and Ayala to 168 months' imprisonment. Both Cruz and Ayala appeal their convictions.

Cruz presents three claims. First, he argues that insufficient evidence supported his conviction for aiding and abetting the use of a firearm during a crime of violence. He contends that the government failed to adduce evidence sufficient to prove that he carried a "real" firearm as required by § 924(c). Cruz's second and third claims allege prosecutorial misconduct and erroneous jury instructions.

Ayala presents only one claim, arguing that the court erred when it admitted his codefendant's out-of-court statement into evidence. This error, he contends, violated his Sixth Amendment Confrontation Clause rights. After review of these claims, we affirm both convictions.

## I.  Facts

The facts stated here, which are relevant to Cruz's sufficiency claim, are presented in the light most favorable to the jury's verdict.  United States v. Cruz-Rodríguez, 541 F.3d 19, 25 (1st Cir. 2008).  We add more facts where necessary to our discussion of the other appellate claims.

On February 17, 2006, two armed men entered a bank in Puerto Rico shouting, "This is a robbery!"  One of the men, later identified as Cruz, proceeded to the bank's front counter and demanded the tellers put money in a large, black plastic bag.  The other man, later identified as Ayala, shepherded bank employees to the front of the bank.  Four bank employees testified that Cruz carried a gun.  Collectively, these four employees described the gun as a "silver," "shiny," "nickel plated" "pistol."  Two bank employees testified that Ayala carried a gun as well, with one describing it as a "nickel plated," "short barreled" "pistol" and the other describing it as a "silver handgun."

The tellers complied with Cruz's demand, placing money inside the bag.  After receiving the money, Cruz and Ayala exited the bank, having been inside between one and two minutes.

The police received information that Cruz and Ayala were traveling in a red Mazda.  Shortly thereafter, police officers discovered an abandoned car matching this description.  Near the car, they found Cruz and Ayala.  A search of the area yielded a

black plastic bag containing money from the bank.[1] A search of the red Mazda produced a bullet casing on the passenger's seat. The bullet casing corresponded with a nine-millimeter Luger brand bullet or cartridge. No guns, however, were ever found.

At trial, in addition to introducing testimony from bank employees and police officers, the government introduced a bank surveillance video. The video showed Cruz and Ayala entering the bank brandishing guns. The jury found both defendants guilty on all three counts. We first address the claims presented by Cruz.

## II. Discussion

### A. Cruz

#### 1. Sufficiency claim

Because Cruz failed to move for a judgment of acquittal on Count 3 -- for aiding and abetting the use of a firearm during a bank robbery -- we review his sufficiency claim for plain error only. See United States v. Díaz, 519 F.3d 56, 63 (1st Cir. 2008).[2] Under the plain error standard, we will not reverse unless the allowing the conviction to stand would result in a "clear and gross

---

[1] The bank's loss was estimated at $45,410.16.

[2] Cruz claims that he moved for a judgment of acquittal on Count 3 and that, as a result, the de novo standard of review applies. The record, however, is clear that Cruz's Rule 29 motion was directed at Counts 1 and 2. In any event, as our analysis below indicates, Cruz's sufficiency claim would fail even under the more searching de novo standard.

injustice." United States v. Pratt, 496 F.3d 124, 127 (1st Cir. 2007) (internal quotations omitted).[3]

Cruz's sufficiency claim focuses on the definition of "firearm."  He starts with the premise that a conviction under 18 U.S.C. § 924(c), requires proof that the defendant used a "real" firearm when committing the predicate offense.  See United States v. Taylor, 54 F.3d 967, 975 (1st Cir. 1995) (noting that "a toy or a replica will not do") (quotation omitted).  For purposes of § 924(c), a firearm is defined as:

> (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive

---

[3] Where preserved, we review a sufficiency claim de novo.  Under that standard, we examine the evidence, both direct and circumstantial, in the light most favorable to the prosecution and decide whether that evidence, including all plausible inferences drawn therefrom, would allow a rational factfinder to conclude beyond a reasonable doubt that the defendant committed the charged count or crime.  See United States v. Fenton, 367 F.3d 14, 18 (1st Cir. 2004).

device.[4] Such term does not include an antique firearm."

18 U.S.C. § 921(a)(3).

Armed with this definition, Cruz argues that no reasonable jury could conclude that he used a "real" firearm in the robbery. He points to two pieces of evidence to support this argument. First, one of the bank employees who testified that Cruz carried a gun later testified on cross-examination that he was not a "gun inspector" and admitted that he could not tell whether the gun Cruz carried was real or a toy. Second, Cruz notes that he confessed to an FBI agent that BB guns had been used in the robbery.

---

[4] Destructive device is further defined as:

(A) any explosive, incendiary, or poison gas -- (i) bomb, (ii) grenade, (iii) rocket having a propellant charge of more than four ounces, (iv) missile having an explosive or incendiary charge of more than one-quarter ounce, (v) mine, or (vi) device similar to any of the devices described in the preceding clauses; (B) any type of weapon (other than a shotgun or a shotgun shell which the Attorney General finds is generally recognized as particularly suitable for sporting purposes) by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, and which has any barrel with a bore of more than one-half inch in diameter; and (C) any combination of parts either designed or intended for use in converting any device into any destructive device described in subparagraph (A) or (B) and from which a destructive device may be readily assembled.

Id. § 921(a)(4).

When analyzing Cruz's claim, we must keep certain principles in mind. "Although § 924(c) requires proof that the gun is real, the government's proof need not 'reach a level of scientific certainty.'" United States v. Roberson, 459 F.3d 39, 47 (1st Cir. 2006) (citation omitted). Descriptive lay testimony can be sufficient to prove that the defendant used a real gun. Id. (citing United States v. Kirvan, 997 F.2d 963, 966-67 (1st Cir. 1993)); Taylor, 54 F.3d at 976 (concluding that the evidence was sufficient to prove the gun was real where three eyewitnesses to a bank robbery, who observed the object held by the defendant at close range, testified that it was a gun).

We find no error at all here, much less plain error. The record contains evidence, both direct and circumstantial, sufficient to allow a reasonable jury to conclude that Cruz used a real firearm during the robbery. The direct evidence included the testimony of four bank employees. These employees testified that Cruz held a gun, collectively describing the gun as a "silver," "shiny," "nickel plated" "pistol." These descriptions are consistent with a conclusion that Cruz and Ayala used real guns. In fact, they are nearly identical to the descriptions provided by bank employees who testified in Kirvan. In that case in which one of the witnesses described the item held by the defendant as a "silver," "shiny," "handgun," we held that the government introduced sufficient evidence that the gun used in the robbery was

real.  997 F.2d at 966-67.  Moreover, none of the witnesses in this case, all of whom had ample time to view the gun, described it as a BB or toy gun.  See Taylor, 54 F.3d at 976.  In addition to this eyewitness testimony, the government also introduced a surveillance video showing Ayala and Cruz entering the bank and holding what appeared to be weapons.  Although the videotape did not give the jury the superior vantage point that the bank tellers had, this additional evidence did allow the jurors to see for themselves what the witnesses had observed.

Finally, the jury also had circumstantial evidence to draw upon in concluding that Cruz possessed a real firearm.  Two pieces of evidence stand out.  First, the bank employees all responded as if the guns held by both Cruz and Ayala were real, complying with the requests made by the robbers.  The jury could have reasonably inferred, based on the reactions from the employees in combination with the eyewitness testimony, that Cruz and Ayala carried real firearms.  Second, the police discovered a bullet casing in the vehicle used by Cruz and Ayala that corresponded with a real firearm.  In our view, this circumstantial evidence, taken together with the direct evidence recounted above, supported the jury's verdict on Count 3.

Our conclusion that sufficient evidence underlies Count 3 is not undermined by the evidence Cruz directs to our attention -- a witness's expressed uncertainty regarding whether the gun Cruz

held was real and Cruz's alleged confession to an FBI agent that BB guns were used in the robbery. The wavering testimony of the one bank teller must be placed in context. Three other bank tellers expressed no such uncertainty. As for Cruz's statement to the FBI, it does not merit overturning the verdict. In addition to being self-serving, the statement was never admitted into evidence.

### 2. Prosecutorial Misconduct

Cruz claims that the government committed prosecutorial misconduct during its closing argument, warranting a new trial. Specifically, he maintains that the prosecutor inaccurately recounted the facts in the record and therefore prejudiced the outcome of the case.

Cruz focuses on the prosecutor's statement recapping the testimony of various bank tellers. The prosecutor, Cruz notes, told the jury that the bank tellers testified that Cruz and Ayala carried "firearms."[5] Cruz argues that this was inaccurate because the tellers never used the term "firearms" in their testimony. Rather, the tellers used the words "pistol" and "handgun" to describe the objects held by Cruz and Ayala. The prosecutor's

---

[5] The prosecutor stated:

> And the evidence clearly shows on the video both individuals were possessing firearms and the bank tellers who they approached, as well as another person who testified here said that without a doubt that those individuals had firearms.

paraphrasing was prejudicial, Cruz contends, because "[n]ot all handguns are firearms."

Where an improper statement has been made, we typically ask whether the statement "so poisoned the well" that a new trial is merited. United States v. Carpenter, 494 F.3d 13, 23 (1st Cir. 2007). But because Cruz did not object to the prosecutor's statement at trial, our review is only for plain error. United States v. Vanvliet, 542 F.3d 259, 270 (1st Cir. 2008).[6]

We find no plain error. To begin, the prosecutor's paraphrasing did not plainly result in a factual inaccuracy. Although Cruz claims that "not all handguns are firearms," a handgun, according to its dictionary definition, is "a firearm (as a revolver or pistol) designed to be held and fired with one hand." See Merriam-Webster's Collegiate Dictionary 525 (10th ed. 2001); see also United States v. McKeeve, 131 F.3d 1, 14 (1st Cir. 1997) ("[A] comment by counsel in the course of jury summation that merely recounts properly admitted testimony, accurately and without embellishment or distortion, cannot constitute reversible error.") (citation omitted)).

Moreover, the prosecutor's use of the word "firearm" did not prejudice Cruz. The district court gave two instructions to

_____

[6] As was the case with his sufficiency claim, Cruz contends that he preserved his claim of prosecutorial misconduct and that we should review the prosecutor's statement de novo. After review of the record, we disagree.

-11-

the jury that safeguarded against any potential prejudice.  First, the court emphasized that the prosecutor's closing argument was not evidence.  United States v. Bey, 188 F.3d 1, 8 (1st Cir. 1999) (concluding that prosecutor's inaccurate recounting of evidence during closing argument did not prejudice the defendant where "the district court explicitly cautioned the jury that it could not consider the arguments of counsel as evidence against [the defendant]"); see also United States v. Brandao, 539 F.3d 44, 64 (1st Cir. 2008).  And second, during jury instructions the court related the legal definition of the word "firearm" to the jury.  So, however the prosecutor paraphrased the testimony of the bank tellers, it was ultimately and clearly up to the jury to conclude whether the guns used qualified as firearms.[7]

### 3.  Jury instruction

Finally, Cruz claims that the court issued erroneous jury instructions.  Specifically, Cruz asserts that the court's failure to define "dangerous weapon" when instructing the jury on Count 2 led the jury to believe that it could convict Cruz on Count 3 if it found that Cruz used a "dangerous weapon" during the robbery.  On the contrary, he asserts, to convict him on Count 3 the jury had to find that he used a "firearm."  The difference between a "firearm"

---

[7] We note that Cruz does not argue that the "without a doubt" language in the prosecutor's closing argument was problematic. Accordingly, this argument is waived.  United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

-12-

and a "dangerous weapon" is important, Cruz argues, because although a BB gun or even a toy gun may qualify as a "dangerous weapon" under 18 U.S.C. § 2113(d) (Count 2), neither would qualify as a "firearm" under 18 U.S.C. § 924(c) (Count 3). Compare Kirvan, 997 F.2d at 966 (noting that, under § 924(c), "a toy or replica will not do") (citation omitted) with United States v. Cannon, 903 F.2d 849, 854-55 (1st Cir. 1990) (concluding that, under § 2113(d), a toy gun may qualify as a dangerous weapon).

Because Cruz did not object to the court's instructions at trial, our review is again for plain error. United States v. González-Vélez, 466 F.3d 27, 35 (1st Cir. 2006) (observing that this standard is "exceedingly difficult to satisfy in jury instruction cases") (internal quotation marks omitted). In assessing whether jury instructions were erroneous in the first place, we review them as a whole to determine if they "adequately explained the law or whether they tended to confuse or mislead the jury on the controlling issues." Id.

We find no error in the court's instructions, much less plain error. The court appropriately instructed the jury regarding the definition of firearm. The court instructed the jury that, for purposes of Count 3, the firearm count, it must find that Cruz used a "firearm" during the robbery, and defined a firearm as "any weapon which will or is designed to or may readily be converted to expel a projectile by the actions of an explosive." In so doing,

-13-

the court made plain to the jury that it could not convict Cruz on Count 3 if it found that he used a toy gun or BB gun during the robbery.

## B.  Ayala

We turn now to Ayala's sole claim.  Ayala argues that the court erred when it allowed an FBI agent to testify regarding an out-of-court statement made to authorities by his codefendant, Cruz.  The court allowed the agent to testify about Cruz's statement after Ayala's counsel, via cross-examination, questioned a Puerto Rico police officer about the failure of the police to pursue various investigatory options after it detained the two defendants.

The agent, who was the "case agent" for the investigation, explained that the FBI and Puerto Rico police failed to pursue certain investigatory options because they believed they had captured the right suspects.  In doing so, the agent referred to Cruz's out-of-court statement while testifying that:

> I became aware at the time of the detention of the two defendants that [Cruz] had stated to [the officer] who gained custody of him, that . . . 'the money is over there in a black bag, we already threw away the weapons,' and something to the effect of, 'we're screwed, less than five minutes and they caught us.'

In Ayala's view, the court's decision to admit Cruz's out-of-court statement into evidence violated his Confrontation Clause rights as defined by the Supreme Court's decisions in

-14-

Crawford v. Washington, 541 U.S. 36 (2004) and Bruton v. United States, 391 U.S. 123 (1968).  Ayala argues that the Court should have avoided a Crawford or Bruton problem by either suppressing the statement or severing his trial from Cruz's.  We review this claim de novo.  United States v. De La Cruz, 514 F.3d 121, 133 (1st Cir. 2008).

"The Confrontation Clause guarantees a criminal defendant the right 'to be confronted with the witnesses against him.'" United States v. Rodríguez-Duran, 507 F.3d 749, 768 (1st Cir. 2007) (quoting U.S. Const. amend. VI).  Ayala says that his right of confrontation has been infringed under both Crawford and Bruton. As we explain more fully below, however, the admission of Cruz's out-of-court statement offended neither Crawford nor Bruton for two reasons.  First, the statement was not offered for its truth -- that is, to prove that the money was in the bag, that they were "screwed" or even that the defendants were the true culprits -- but rather to explain why the FBI and police did not pursue other investigatory options after apprehending the defendants.  And second, Ayala's trial strategy opened the door to the statement's admission.

## 1.  Crawford

We start with the Supreme Court's decision in Crawford, which held that the Confrontation Clause prohibits the admission of testimonial hearsay into evidence against the defendant unless the

declarant is unavailable to testify at trial and the defendant had a prior opportunity to cross-examine him. United States v. Earle, 488 F.3d 537, 542 (1st Cir. 2007) (citing Crawford, 541 U.S. at 68). It follows, then, that even where a declarant's out-of-court statement is testimonial,[8] the statement may nevertheless be admitted into evidence if one of the following three circumstances exists: (1) the statement is not hearsay in that it is being admitted for a purpose other than establishing the truth of the matter asserted; (2) the declarant testifies at trial; or (3) the defendant had a prior opportunity to cross-examine the declarant and the declarant is unavailable. United States v. Maher, 454 F.3d 13, 19-20 (1st Cir. 2006); see also Crawford, 541 U.S. at 53-54, 59 n.9.

In his Crawford-based confrontation clause argument, Ayala presses two points: that the testimony was hearsay and, even if the government offered a non-hearsay basis for admitting the statement, that basis was pretextual.

First, Ayala contends that the court violated Crawford because none of the circumstances noted above existed. The government argues the contrary, contending that Cruz's statement was not hearsay because it was not admitted to prove the truth of the matter asserted.

_____

[8] Both parties agree that Cruz's statement is "testimonial" in nature.

-16-

We agree that Cruz's confession was not hearsay. As Federal Rule of Evidence 801(c) provides: "[h]earsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Out-of-court statements offered not to prove the truth of the matter asserted but merely to show context -- such as a statement offered for the limited purpose of showing what effect the statement had on the listener -- are not hearsay. United States v. Bailey, 270 F.3d 83, 87 (1st Cir. 2001) (noting a statement "offered to show the effect of the words spoken on the listener (e.g., to supply a motive for the listener's action)" is not hearsay) (citation omitted); see also United States v. Castro-Lara, 970 F.2d 976, 981 (1st Cir. 1992); 4 Stephen A. Saltzburg et al., Federal Rules of Evidence Manual § 801.02[1][f] (9th ed. 2006) ("If a statement is offered for its effect on the listener, in order to explain the listener's conduct, it does not matter whether the declarant is telling the truth.").

Here, the government introduced Cruz's confession to explain why the authorities cut short their investigation into the robbery, specifically, why they did not take fingerprints or DNA evidence from the red Mazda. The district court drove this point home to the jury on two separate occasions. Prior to admitting the statement, the court told the jury:

> [The FBI agent] is going to testify as to actions he took in his investigation of this

-17-

case, based upon information he received. And what I'm going to instruct you is that his testimony concerning what he did, the actions he took, because of information [he] had, is not being presented to you to consider the truthfulness of the defendant's statement in any way whatsoever. You're instructed not to consider the statement he's going to testify about as evidence on any of the counts or against the defendants of any of the counts charged in the indictment.

Additionally, when issuing the final jury instructions, the court emphasized that the jury was not to consider Cruz's statement "for the truth of the matter asserted therein and . . . must only consider it for the limited purpose of providing a context for [the] decision not to send the fingerprint evidence to the laboratory for processing."

We now turn to the second part of Ayala's Crawford argument. He contends, citing Maher, 454 F.3d 13, that the Crawford inquiry does not end merely because the government advances a non-hearsay based justification for offering the declarant's statement. Rather, we must satisfy ourselves that the government's justification for offering the declarant's statement is not pretextual. Pursuing this further, Ayala argues that the record indicates that the government's purported non-hearsay based justification for offering Cruz's confession masked an attempt to circumvent Crawford.

In Maher, we acknowledged that if the government needs only to identify a non-hearsay based reason for introducing the

statement it could circumvent <u>Crawford</u>'s constitutional rule as well as the hearsay rule. 454 F.3d at 22; <u>see also</u> <u>United States v. Silva</u>, 380 F.3d 1018, 1020 (7th Cir. 2004) ("Allowing agents to narrate the course of their investigations, and thus spread before juries damning information that is not subject to cross-examination, would go far toward abrogating the defendant's rights under the sixth amendment and the hearsay rule."). Therefore, as was the case in <u>Maher</u>, when an out-of-court statement is purportedly offered into evidence as non-hearsay -- for example, to provide context for police action or inaction -- we are concerned about whether the stated purpose for introducing the evidence masks an attempt to evade <u>Crawford</u> and the normal restrictions on hearsay. <u>Maher</u>, 454 F.3d at 22-23 (noting that "[t]he dividing line often will not be clear between what is true background to explain police conduct (and thus an exception to the hearsay rule and thus an exception to <u>Crawford</u>) and what is an attempt to evade <u>Crawford</u> and the normal restrictions on hearsay" and warning prosecutors against "back-door attempts" to get statements by non-testifying declarants before a jury).

In this case, after analyzing how Cruz's confession came to be admitted into evidence, we are satisfied that no pretext was afoot and that the government did not attempt an end-run around <u>Crawford</u> and the hearsay rules.

Cruz's confession was the subject of a suppression hearing held in the midst of the trial. During this hearing, Ayala sought to suppress the admission of Cruz's confession, arguing that it created a potential Bruton problem. The prosecutor informed both the court and the defendant that he did not intend to introduce Cruz's confession in the government's case-in-chief. The government did, however, reserve the right to present the confession for purposes of rebuttal.

At trial, Ayala's counsel opened the door to the FBI agent's testimony, pointedly cross-examining a police officer about the decision not to pursue certain investigatory opportunities after apprehending the defendants. Counsel focused on potential fingerprint and DNA evidence the police could have gathered from the red Mazda and sent for analysis. In total, Ayala's counsel identified "eleven missed opportunities" to tie Cruz to the red Mazda. Faced with this line of questioning, the government sought to introduce the FBI agent's testimony to explain why the FBI and police did not lift forensic evidence from the car.

Ayala argues that the government's true motive in admitting the agent's testimony was to march out Cruz's confession, making Ayala guilty by association in the process. In support of this argument, Ayala relies heavily on the fact that the government introduced the substance of the confession rather then constructing a less-prejudicial narrative. Specifically, he suggests that if

the government merely wanted to explain why the FBI and police failed to conduct a more thorough investigation it could have had the agent testify in a manner that entirely avoided referencing Cruz's confession.  As an example, Ayala argues that the agent could have testified that the government chose to truncate the investigation "because of information [the agent had]."

We do not think the government's failure to present a more sanitized narrative reveals a motive to undercut Crawford. Given the tenor of Ayala's cross-examination about the authorities' failure to investigate further, the use of the generalized narrative Ayala suggests would have come at an unjustified cost to the government.  During cross-examination, Ayala's counsel painted a picture of police and FBI ineptitude, observing that the government missed eleven opportunities to tie Ayala to the car, and thus, to the crime.  Generalized testimony limited to an explanation such as "we stopped investigating because of information received," without any context, would not have sufficiently rebutted Ayala's line of questioning. While there can be circumstances under which Confrontation Clause concerns prevent the admission of the substance of a declarant's out-of-court statement where a less prejudicial narrative would suffice in its place, this is not such a case.

## 2. <u>Bruton</u>

A <u>Bruton</u> claim arises in a narrower set of circumstances than does a <u>Crawford</u> claim, specifically, involving the admission of a non-testifying <u>codefendant's</u> out-of-court statement during a joint trial for the purpose of proving the truth of the matter asserted. <u>See</u> <u>Tennessee</u> v. <u>Street</u>, 471 U.S. 409, 413 (1985).

It is well established that a codefendant's out-of-court statement is admissible against that codefendant as a "party admission." Fed. R. Evid. 801(d)(2); <u>United States</u> v. <u>Vega Molina</u>, 407 F.3d 511, 519 (1st Cir. 2005). But that same statement is inadmissible hearsay and raises Confrontation Clause concerns with respect to another defendant being prosecuted in a joint trial. <u>Id.</u> (citing <u>Crawford</u>, 541 U.S. at 51-52, 68).

A trial judge may attempt to avoid any hearsay or Confrontation Clause problems by instructing the jury not to consider the statements against any defendant other than the codefendant-declarant. <u>Vega Molina</u>, 407 F.3d at 510; <u>see also</u> <u>Richardson</u> v. <u>Marsh</u>, 481 U.S. 200, 206 (1987) ("Ordinarily, a witness whose testimony is introduced at a joint trial is not considered to be a witness 'against' a defendant if the jury is instructed to consider that testimony only against a codefendant. This accords with the almost invariable assumption of the law that jurors follow their instructions.") (citation omitted). As <u>Bruton</u> holds, however, such a limiting instruction will not effectively

remedy hearsay and Confrontation Clause problems if the codefendant's statement is "so powerfully inculpating of the other defendants that there would be substantial doubt as to whether the jury could abide by a limiting instruction." Vega Molina, 407 F.3d at 519 (explaining further that a statement is "powerfully inculpating" where it is "inculpatory on its face") (citing Bruton, 391 U.S. at 135-37).[9]

Importantly though, Bruton's conditional bar on the admission of a codefendant's statement during a joint trial operates on a key premise -- that the statement is being offered to prove the truth of the matter asserted. See Street, 471 U.S. at 413. Where the codefendant's statement is not being offered to prove the truth of the matter asserted, a court may, in certain circumstances, admit the statement provided it gives a limiting instruction explaining the limited purpose the statement serves. Id. at 414; Furr v. Brady, 440 F.3d 34, 39 (1st Cir. 2006).

The Supreme Court's post-Bruton decision in Street is the exemplar. In that case, the Court held that the district court's admission of a non-testifying codefendant's out-of-court confession did not raise a Confrontation Clause problem because of "[t]he nonhearsay aspect of [the codefendant's] confession." Street, 471

[9] Typically, courts allowing introduction of the co-defendant's out-of-court statement seek to mitigate its inculpatory impact by redacting from the statement "the [defendant's] name and any reference, direct or indirect, to his or her existence." Molina, 407 F.3d at 519 (citing Marsh, 481 U.S. at 211).

-23-

U.S. at 414. The Court noted that the government offered the confession "not to prove what happened at the murder scene but to prove what happened when [Street, the defendant, later] confessed."). Id. The Court went on to observe that the government introduced the codefendant's confession to rebut Street's testimony that his own confession was coerced and, importantly, that no alternative short of admitting the codefendant's statement along with the limiting instruction would have served the government's interest. Id. at 415 (noting that the confession could not be "edited to reduce the risk of jury misuse without detracting from the alleged purpose for which the confession was introduced") (quotation omitted).

This case fits comfortably within the rule of Street. Here, as explained above, the district court admitted Cruz's out-of-court statement not to prove the truth of the matter asserted but to rebut Ayala's attempt to cast doubt on the integrity of the government's investigatory efforts. The district court instructed the jury as to the limited nature of the statement's admission. And the government's interest in introducing the substance of the confession, rather than a more sanitized narrative, was both legitimate and strong.

### III. Conclusion

For the reasons provided above, the convictions are affirmed.

**AFFIRMED.**