# United States Court of Appeals
## For the First Circuit

No. 24-1184

UNITED STATES OF AMERICA,

Appellee,

v.

VICTOR SOTO-SANCHEZ, a/k/a Newton Batista, a/k/a Hooka,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Lance E. Walker, U.S. District Judge]

Before

Barron, Chief Judge,
Montecalvo, and Rikelman, Circuit Judges.

Edward Crane for appellant.

Brian S. Kleinbord, Assistant United States Attorney, with whom Darcie N. McElwee, United States Attorney, was on brief, for appellee.

May 27, 2025

**RIKELMAN, <u>Circuit Judge</u>**.  Victor Soto-Sanchez appeals his conviction and sentence for possession of a controlled substance with an intent to distribute.  He argues that his Sixth Amendment right to confront the witnesses against him was violated when the district court permitted a police officer to testify at trial about the substance of an informant's tip.  Soto-Sanchez also claims that the district court erred in applying a two-point enhancement for obstruction of justice in determining his sentence.

Although we agree with Soto-Sanchez that his Sixth Amendment rights were violated, we conclude that the error was harmless given the overwhelming evidence against him.  Nevertheless, we reiterate that the government cannot avoid the requirements of the Confrontation Clause by labeling improper testimony as mere background context.  We also reject Soto-Sanchez's sentencing challenge.  We conclude that he has waived his legal and factual arguments related to his claim that only conduct that independently violates federal law can qualify as "unlawful influence" under section 3C1.1 of the U.S. Sentencing Guidelines.  Thus, we affirm his conviction and sentence.

## I. BACKGROUND

Because Soto-Sanchez does not challenge the sufficiency of the government's evidence against him at trial, we recite the facts in a "balanced" manner and "objectively view[] the evidence

- 2 -

of record." United States v. Velazquez-Fontanez, 6 F.4th 205, 212 (1st Cir. 2021) (quoting United States v. Amador-Huggins, 799 F.3d 124, 127 (1st Cir. 2015)).

## A. Investigation

In late 2021, Detective Duane Cloutier of the Waterville Police Department received a phone call from a confidential informant who wanted to provide a tip on a "large-scale drug dealer" in Waterville, Maine, in exchange for leniency for another individual with pending charges. The informant described the alleged drug dealer as a Dominican man in his mid-30s who sold "large quantities" of three types of fentanyl and crack cocaine; lived in an apartment on College Avenue with Jasmine Dostie, who drove a white BMW; and had firearms in his residence.

After receiving this information, law enforcement officers conducted various checks on Jasmine Dostie to confirm that she drove a white BMW and lived at 185 College Avenue, Unit 1. The officers then used the informant to conduct two controlled buys of fentanyl from that apartment and determined that a man matching Soto-Sanchez's description was involved in the sales. In addition, the officers conducted surveillance and additional checks to confirm that Soto-Sanchez was associated with the 185 College Avenue address.

Based on the investigation, surveillance, and controlled buys, the officers applied for and received a search warrant for

Soto-Sanchez, his vehicle, and the apartment on College Avenue. Officers executed the search warrant on December 14, 2021, and found cash, bank cards, and identification cards on Soto-Sanchez. Afterwards, they arrested him and brought him to the police station. Officers then searched the apartment and recovered over ten pounds of cocaine and fentanyl, many firearms and magazines, cash, and assorted drug paraphernalia and equipment. Officers also discovered a notebook that appeared to be a drug ledger recording names, drug amounts, and dollar amounts in Spanish, as well as documents indicating that Soto-Sanchez resided in the apartment.

The police then interviewed Soto-Sanchez at the station. After being advised of his Miranda rights, Soto-Sanchez stated that the drugs found in the apartment belonged to "dark-skinned people" "from downtown" who paid him to store them and that the guns belonged to friends who visited. He also informed the police that his DNA and fingerprints would likely be found on the drugs and guns, because he touched the items when they arrived at his apartment.

### B. Trial

After a grand jury indicted Soto-Sanchez on a single count of possession with intent to distribute cocaine and fentanyl in violation of 21 U.S.C. § 841(a)(1), he proceeded to trial. The government called Detective Cloutier as its second witness. Before

- 4 -

the detective took the stand, Soto-Sanchez objected on Confrontation Clause and hearsay grounds to any testimony by the detective about the substance of the confidential informant's tip. In response, the government claimed that the substance of the tip would be offered only "to show the effect on the reader or listener [and] to explain the steps [Detective Cloutier] took in the investigation," not for its truth. The district court overruled Soto-Sanchez's objection, confirmed that it was preserved for appeal, and asked him to object to individual questions as needed during the direct examination.

Soon after taking the stand, Detective Cloutier testified that he had received a tip from an informant about a drug dealer in Waterville, Maine. When the government asked Detective Cloutier to provide details about the informant's tip, Soto-Sanchez again objected.[1] The government reiterated that the testimony would "show why Detective Cloutier took the steps he did in the investigation," and the district court overruled the objection once more. Detective Cloutier then testified:

> The individual told me that this large-scale drug dealer lived on College Avenue with a girl named Jasmine Dostie. The individual told me that the apartment building they live

---

[1] At this point in the direct examination, Soto-Sanchez objected on hearsay grounds only, despite raising both a hearsay and a Confrontation Clause objection before Detective Cloutier took the stand. The government agrees that his initial objection was sufficient to preserve the Confrontation Clause challenge on appeal.

in was the last apartment building on the right-hand side if you were driving from Waterville to Fairfield. The individual told me that the drug dealer is a Dominican male that goes by the street name Hooka and is in his mid[-]30s. The individual told me that Hooka sells three different types of fentanyl, along with crack cocaine. The individual told me that Hooka does not sell small quantities; he sells large quantities. The three different kinds of fentanyl the individual said was green, which was the most potent, white, which was a little less potent [than] the green, and then brown, which was the least potent. Besides that, the individual said that Hooka bought Jasmine a white BMW that they use to travel in, and the individual also said that, having been in the apartment, they'd seen pistols in the apartment.

The district court did not revisit Soto-Sanchez's objection immediately after this testimony. Instead, the government proceeded with its direct examination of Detective Cloutier, followed by defense counsel's cross-examination, and then re-direct, and re-cross.

More than two hours after Detective Cloutier testified about the substance of the informant's tip, he left the stand. At that point, the district court sua sponte provided a limiting instruction to the jury:

Early in his direct examination when [the prosecutor] was asking Detective Cloutier questions specifically about the . . . confidential informant, and specifically statements that Detective Cloutier said that the confidential informant made to him, those statements were not offered by the Government and you are not to consider them as evidence supporting the subject of

- 6 -

those statements.  They're not offered for the truth of the matter asserted in those statements.  They're offered for the limited purpose of explaining the next steps in the investigation that Detective Cloutier took.  Thank you.

The government also called as a witness Jasmine Dostie, who was cooperating with the prosecutors under an immunity agreement.  Dostie confirmed that Soto-Sanchez primarily spoke Spanish; had multiple nicknames, including "Hooka" and "the plug" (another term for "drug dealer"); and had lived with her at 185 College Avenue, Unit 1.  Dostie also testified that Soto-Sanchez had told her that he sold drugs himself and supplied three lower-level dealers with drugs: Kenneth Ortega, Brad Brown, and Tori York.

After a three-day trial, the jury found Soto-Sanchez guilty of possession with intent to distribute cocaine and fentanyl.  The jury also found beyond a reasonable doubt that Soto-Sanchez's offense involved 400 grams or more of a mixture or substance containing a detectable amount of fentanyl, and 500 grams or more of a mixture or substance containing a detectable amount of cocaine.

## C. Sentencing

In a pre-sentence investigation report ("PSR"), the probation officer recommended that the district court apply a two-point enhancement for obstruction of justice under

section 3C1.1 of the U.S. Sentencing Guidelines.  Section 3C1.1 reads:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.

U.S. Sent'g Guidelines Manual § 3C1.1 (U.S. Sent'g Comm'n 2023) [hereinafter "U.S.S.G."].  Application Note 4(A) further explains that the guideline applies to conduct that amounts to "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so."  Id. § 3C1.1 cmt. n.4(A).

The probation officer explained that the district court could apply the two-point enhancement based on section 3C1.1 and the following uncontested facts from paragraph 13 of the PSR:

> The week of January 10, 2022, Ortega [allegedly one of the lower-level drug dealers Soto-Sanchez supplied] went to Dostie's residence, and despite her telling him to leave, he inquired, "What am I supposed to tell him?" and "He told me to tell you not to say anything."  Dostie understood Ortega to be speaking about [Soto-Sanchez].  Additionally, subsequent to the offense, the defendant's cousin from New Jersey messaged Dostie and told Dostie that the defendant told her to contact Brown [another alleged drug dealer] for money; Dostie did not contact Brown for

- 8 -

any money.  Dostie stated that she has not received any threats.

Soto-Sanchez objected to the enhancement in his sentencing memorandum.  The entirety of his objection stated:

> In this case, Ms. Dostie did not report that anybody threatened or intimidated her and there is no proof of what Mr. Soto[-]Sanchez intended by attempting to get her money.  Ms. Dostie was his girlfriend and he could have just as easily been trying to look out for her during his incarceration or to get money on his books at the jail.

The district court sentenced Soto-Sanchez in February 2024.  At the sentencing hearing, Soto-Sanchez elaborated briefly on his objection to the sentencing enhancement, making only two points.  First, he "vehemently denie[d] that he sent anyone over there to talk with [Dostie] about this case, and he also dispute[d] that he had any knowledge of that."  Second, he conceded that, if he had, the enhancement "could apply, certainly," and then argued "but I don't think it's the most egregious way to obstruct justice and I think it can be interpreted differently as well, you know, the money thing is him trying to take care of her while he's in jail.  So I'll rest on that."

The district court applied the enhancement over Soto-Sanchez's objection.  In doing so, it relied on our decision in United States v. O'Brien, 870 F.3d 11 (1st Cir. 2017), explaining that O'Brien "held that the enhancement applied when the defendant told the victim's attorney that her ability to repay

funds to the victim might depend on what the victim told the government." Id. at 18. The court ultimately adopted a guideline sentencing range of 210 to 262 months and imposed a sentence of 210 months, followed by five years of supervised release.

Soto-Sanchez timely appealed.

## II. DISCUSSION

As we previewed above, this appeal raises two primary issues. First, Soto-Sanchez challenges his conviction by claiming that the district court admitted testimony that violated his Confrontation Clause rights. Second, Soto-Sanchez challenges his sentence by contending that the district court erred in applying the obstruction-of-justice enhancement. We address each argument in turn and ultimately conclude that neither warrants reversal or resentencing.

### A. Confrontation Clause

Soto-Sanchez contends that admitting Detective Cloutier's testimony on the substance of the confidential informant's tip violated his Confrontation Clause rights. We agree but conclude that the error was harmless.

### 1. Violation of Confrontation Clause

We review preserved Confrontation Clause challenges de novo. See United States v. Cruz-Díaz, 550 F.3d 169, 176 (1st Cir. 2008). The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the

- 10 -

right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The U.S. Supreme Court defined the scope of a defendant's Confrontation Clause rights in its landmark decision in Crawford v. Washington, 541 U.S. 36 (2004). After conducting a survey of the Clause's historical background, the Court held that "a declarant's 'testimonial' out-of-court statement is not admissible under the Confrontation Clause unless (1) the declarant testifies, or (2) the defendant had a prior opportunity for cross-examination and the declarant is unavailable, or (3) the evidence is admitted for purposes other than establishing the truth of the matter asserted." United States v. Maher, 454 F.3d 13, 19-20 (1st Cir. 2006) (citing Crawford, 541 U.S. at 53-54, 59 n.9).

The government does not dispute that the confidential informant's statement to Detective Cloutier was testimonial. And the confidential informant did not testify at trial, nor did Soto-Sanchez have a prior opportunity to cross-examine the informant. Thus, the only Confrontation Clause issue on appeal is whether the informant's statement was "admitted for purposes other than establishing the truth of the matter asserted." Id.

The government argues that the informant's statement was admissible under Crawford because it was offered not for its truth but to explain the detective's next steps in the investigation: conducting records checks on Dostie and arranging controlled buys. Our court has sometimes held that out-of-court testimonial

- 11 -

statements do not violate the Confrontation Clause when they serve only to provide necessary context for other admissible evidence. For example, in United States v. Walter, we held that a recording of an incriminating conversation between a non-testifying informant and the defendant was properly admitted to provide context for the defendant's admissions.  See 434 F.3d 30, 33-34 (1st Cir. 2006).  We explained that, without hearing the informant's half of the conversation, the jury could not understand the defendant's responses, so the informant's statements were "reasonably required to place [the defendant's] admissions into context" and were not offered for their truth.  Id. at 34.

But we do not automatically reject a Confrontation Clause challenge whenever the government claims that it introduced out-of-court statements only to provide "context."  "[W]hen an out-of-court statement is purportedly offered into evidence as non-hearsay -- for example, to provide context for police action or inaction -- we are concerned about whether the stated purpose for introducing the evidence masks an attempt to evade Crawford and the normal restrictions on hearsay." Cruz-Díaz, 550 F.3d at 177 (citing Maher, 454 F.3d at 22-23); see also Smith v. Arizona, 602 U.S. 779, 794 (2024) ("We therefore do not 'accept [a State's] nonhearsay label at face value.'" (alteration in original) (quoting Williams v. Illinois, 567 U.S. 50, 106 (2012) (Thomas, J., concurring))).  Thus, a Crawford assessment requires a court

- 12 -

to "conduct an independent analysis of whether an out-of-court statement was admitted for its truth," and the government's use of the "context" label is not dispositive. Smith, 602 U.S. at 794. If it were, the protections of the Confrontation Clause would prove elusive. See Maher, 454 F.3d at 22.

Indeed, we were unpersuaded when the government made a similar context argument in Maher. There, after a police officer recounted an informant's tip that the defendant sold him cocaine, the district court "immediately" instructed the jury not to consider that statement for its truth. Id. The court also included in its limiting instruction examples of permissible and impermissible inferences the jury could draw from that testimony. See id. at 21. Despite the detailed limiting instruction provided right after the challenged testimony, we held that "[i]t appears the testimony was primarily given exactly for the truth of the assertion that Maher was a drug dealer," and its admission therefore violated the Confrontation Clause. Id. at 23.

In so holding, we rejected the government's argument that the informant's out-of-court statement merely provided context for the police investigation. See id. at 22. As we explained, "the prosecution easily could have structured its narrative to avoid" recounting the out-of-court statement, id. at 23, by, for example, having the officer testify that he "acted upon information received, or words to that effect," id. (quoting

2 Broun et al., McCormick on Evidence § 249, at 103 (5th ed. 1999)). Given this "adequate alternative approach," we concluded that the officer's testimony about the substance of the informant's tip "should not have been admitted." Id. We also "warn[ed] prosecutors of the risks they face in backdoor attempts to get statements by non-testifying confidential informants before a jury." Id.

Maher squarely applies here. Detective Cloutier's testimony recounting exactly what the informant said to him was much more extensive than the police officer's testimony in Maher, and thus the government has a much steeper hill to climb in describing the testimony in this case as purely "contextual." If context had been the only goal, there would have been no reason for Detective Cloutier to describe the informant's statement about the various types of fentanyl Soto-Sanchez purportedly sold, Soto-Sanchez's personal life, and the contents of his apartment. Like the officer in Maher, Detective Cloutier could have explained his next steps in the investigation by stating simply that he "acted upon information received, or words to that effect." Id. (quoting Broun et al., supra, § 249). Thus, "[i]t appears [that Detective Cloutier's] testimony was primarily given exactly for the truth of the assertion that [Soto-Sanchez] was a drug dealer and should not have been admitted given the adequate alternative approach." Id.

- 14 -

Just as in Maher, the district court's limiting instruction here did not prevent any Confrontation Clause violation. See id. (finding violation despite more detailed limiting instruction given "immediately" afterwards). We leave for another day the question of whether an instruction could make a difference in a particularly close case where our independent assessment indicates that the "context" rationale is plausible, and the district court provides a robust instruction immediately after the testimony. But those are not the facts of this case. Instead, the government's "context" argument is not supported by the record, and the district court's instruction came more than two hours after the testimony about the informant's tip. Thus, as in Maher, we consider the fact of the limiting instruction only in determining whether any Crawford error was harmless.[2] See id. at

---

[2] We note that Soto-Sanchez has not raised a Confrontation Clause claim under Bruton v. United States, 391 U.S. 123 (1968), which evaluated the admission of a codefendant's confession in a joint trial. When a codefendant's confession does not directly incriminate the defendant and thus is not testimony "against the [defendant]" for Confrontation Clause purposes, courts reviewing Bruton claims have considered limiting instructions in deciding whether a Bruton error occurred. See, e.g., Samia v. United States, 599 U.S. 635, 643, 655 (2023) (finding no Bruton error where the codefendant's confession "did not directly inculpate the defendant and was subject to a proper limiting instruction"); Tennessee v. Street, 471 U.S. 409, 414-17 (1985) (concluding that the state introduced codefendant's confession for a "legitimate, nonhearsay purpose" and considering limiting instruction to determine whether jurors may have "misused" the confession).

- 15 -

21-23; see infra Section II.A.2.[3]

The concurring opinion reads Maher differently. It concludes that we decided Maher only on "the prejudice prong of the plain error standard" and "thus had no need to determine" whether any Crawford error had occurred.

But most of the Confrontation Clause analysis in Maher would have been unnecessary if the court had intended to decide the case solely on the prejudice prong of the plain error test. To be sure, we found no prejudicial error in Maher. See 454 F.3d at 21-23. Had the court intended to rule only on prejudice grounds, however, it presumably would have followed our usual practice of assuming that an error had occurred and then moving directly to a discussion of the prejudice prong. Instead, the Maher court devoted four pages of its opinion to discussing the merits of the Crawford issue (and only two paragraphs to prejudice), ultimately concluding that "[i]t appears the testimony [about the informant's tip] was primarily given exactly for the

---

[3] In Maher, we reviewed the defendant's Sixth Amendment claim for plain error because he raised his Confrontation Clause challenge for the first time on appeal. See 454 F.3d at 21-23. We ultimately found that the defendant failed to meet the plain error standard because the error was not sufficiently prejudicial, given that the testimony about the informant's tip "was immediately followed by a sua sponte instruction" not to consider it for its truth and the government had introduced overwhelming physical evidence against the defendant. Id. at 23. Here, Soto-Sanchez preserved his Confrontation Clause challenge, so we review it for harmless error. See infra Section II.A.2.

truth of the assertion . . . and should not have been admitted." Id. at 23.  There would have been no need for this extended analysis or the court's ultimate conclusion that the testimony about the tip "should not have been admitted" if the court's holding had been limited to prejudice, with only a warning to the government. Id. (emphasis added).  Thus, we read Maher to have found a Crawford error.[4]

The government makes one last argument on the Confrontation Clause issue: It insists, relying on Cruz-Díaz, that it offered the informant's statement here not for its truth but only to rebut Soto-Sanchez's argument that the government should have investigated other individuals.  We note that the government has forfeited this "rebuttal" argument by failing to raise it at any point before the district court.  Indeed, at trial, the government claimed only that it was offering the testimony about the informant's tip to "show the effect on the reader or listener" and to "explain the [next] steps" in the investigation.

---

[4] The concurring opinion also suggests that Maher did not grapple with the officer's particular testimony in that case and whether it could be justified as mere context-setting.  But we do not see how that can be so when the court expressly considered the facts of the case to conclude that the testimony "should not have been admitted given the adequate alternative approach" because "the prosecution easily could have structured its narrative to avoid such testimony."  Maher, 454 F.3d at 23.  This strikes us as a fact-bound analysis and not "only [a] respon[se]" to the government's "'impossibly overbroad' justification" that any statement from an informant to police which sets context for the investigation is not offered for its truth.

- 17 -

In any event, this case is not like Cruz-Díaz. There, the defendant "opened the door" to the testimonial hearsay by "pointedly cross-examining" an officer about why the police did not pursue other leads. Cruz-Díaz, 550 F.3d at 178. Specifically, Cruz-Díaz questioned the officer about the failure to lift any forensic evidence from a car involved in the offense, including DNA and fingerprint evidence, claiming that the government missed "eleven opportunities" to obtain physical evidence tying him to the crime. Id. All in all, Cruz-Díaz pursued a defense that focused on "paint[ing] a picture of police and FBI ineptitude." Id.

Here, by contrast, Soto-Sanchez did not claim at any point before Detective Cloutier testified that the police failed to investigate other individuals in a way that would have required the detective to describe the informant's statement in response.[5] Instead, Detective Cloutier was only the second witness at trial,

_____

[5] The government contends that Detective Cloutier's testimony responded to defense counsel's claim in his opening statement that several other people had access to the apartment where the drugs were found. To be sure, defense counsel argued in his opening statement that the drugs did not belong to Soto-Sanchez and that many people, including "J.D.," "would frequent Ms. Dostie's apartment before Mr. Soto[-]Sanchez ever started staying there." Defense counsel also stated that Soto-Sanchez told the police that the drugs belonged to J.D. But these general statements are far from the defendant's "pointed[] cross-examin[ation]" in Cruz-Díaz about why the police "missed eleven opportunities to tie [a defendant] to the crime." 550 F.3d at 178. Thus, the government could have rebutted Soto-Sanchez's contention without eliciting the testimonial hearsay.

and the government solicited the testimonial hearsay on direct examination by asking him what the informant told him. Thus, there would have been no "unjustified cost" to Detective Cloutier testifying more generally that he had started his investigation into Dostie and Soto-Sanchez "because of information received." Id. As a result, we conclude that Detective Cloutier's testimony on the substance of the confidential informant's tip violated the Confrontation Clause.

The concurring opinion also suggests that we should not reach the merits of Soto-Sanchez's Crawford claim, given our conclusion below that any error was harmless. Instead, our colleague would have us decide the appeal on harmlessness grounds only and merely repeat Maher's warning from two decades ago. In urging this approach, the concurring opinion suggests that Soto-Sanchez's Crawford claim based on Maher has not been "subjected to true adversarial testing" because "we have no arguments from the parties ventilating the many complexities . . . that necessarily arise in evaluating a case-specific context argument."

But the Maher arguments were the focus of the parties' Confrontation Clause briefing. Soto-Sanchez zeroed in on Maher as the most relevant case in his favor and devoted three pages of his brief to Maher, describing the court's rejection of the government's context argument in that case and comparing the

challenged testimony in Maher to the challenged testimony here. The government responded in kind, and the oral argument also centered on Maher, including the legal impact, if any, of the immediate, curative jury instruction the district court had provided in that case. Further, the government never argued that the Maher court did not find a Crawford error and, instead, tried to distinguish Maher on its facts. It also, commendably, acknowledged at oral argument that "the better practice would be not to have as much detail solicited for the jury" about an informant's tip when the government seeks to rely on that tip only to provide context for its investigation.

Thus, the Crawford and Maher arguments were sufficiently presented in this case. And by resolving Soto-Sanchez's claim on the merits, we provide critical, additional guidance on a recurring issue: the contours of a defendant's Sixth Amendment right to confrontation when the government seeks to introduce testimony about an informant's tip under the "context" framework. At the same time, we reiterate our warning from Maher of the "risks [prosecutors] face in backdoor attempts to get statements by non-testifying confidential informants before a jury." 454 F.3d at 23.

### 2. Harmless Error

Nevertheless, as we previewed above, the Confrontation Clause violation here amounts to harmless error. Even if evidence

is admitted in violation of a defendant's constitutional rights, we do not reverse a conviction if we determine that "the government has met 'its burden of showing that any such error was harmless beyond a reasonable doubt.'" United States v. Cabrera-Rivera, 583 F.3d 26, 36 (1st Cir. 2009) (quoting United States v. Earle, 488 F.3d 537, 545 (1st Cir. 2007)).  To evaluate harmlessness, we consider several factors, including: "the overall strength of the case," "the strength of corroborating or contradicting evidence," "whether the statements were merely cumulative of other (properly admitted) evidence," and "whether the challenged statements were central to the prosecution's case."  Id.

All these factors favor a finding of harmless error here. Setting aside the substance of the informant's tip, the government presented overwhelming evidence that Soto-Sanchez was guilty of possession with an intent to distribute.  The physical evidence alone was staggering.  Cf. Maher, 454 F.3d at 23 (finding that the Confrontation Clause violation was harmless in part due to significant physical evidence of possession with an intent to distribute, including drugs in amounts too large to be explained by personal use, paraphernalia, and related equipment).  Law enforcement officers seized over ten pounds of cocaine and fentanyl from the 185 College Avenue apartment, an amount that the district court later characterized during sentencing as "fairly extraordinary even by [the standards of] federal court drug cases."

In the apartment, they also found multiple firearms and magazines; cash; a notebook that appeared to be a drug ledger written in Spanish; documents indicating that Soto-Sanchez resided there; and assorted drug paraphernalia and equipment, including blenders, a scale, and a money counter. The government also presented evidence collected during a three-week police investigation of Soto-Sanchez, including two controlled buys of fentanyl, as well as Soto-Sanchez's own admissions to the police that his DNA and fingerprints would likely be found on the drugs. Finally, the jury heard Dostie's trial testimony that she and Soto-Sanchez had lived together at 185 College Avenue, Unit 1, and that he had told her he sold drugs himself and supplied drugs to three lower-level dealers.

This properly admitted evidence rendered Detective Cloutier's testimony on the substance of the informant's tip merely cumulative. Cf. Cabrera-Rivera, 583 F.3d at 36-37 (vacating conviction because of Confrontation Clause violation after concluding that the challenged testimony was "not merely cumulative of other [properly admitted] evidence"). Dostie's testimony, the police investigation after the tip, and the physical evidence independently established the facts that Soto-Sanchez was involved in dealing substantial quantities of drugs from the College Avenue address. The physical evidence also confirmed the presence of firearms, fentanyl, and crack cocaine in the apartment.

Thus, the confidential informant's statement here did not "suppl[y] information [un]available from other witnesses." Id. at 37.

The remaining factors also indicate that the Confrontation Clause violation was harmless. The confidential informant's statement was not "central to the prosecution's case." Id. at 36. The government did not refer to the substance of the informant's tip later in its case-in-chief or during its closing argument. See id. (highlighting that the challenged testimony "featured centrally in the government's closing arguments" in ruling that the Confrontation Clause error was not harmless). Finally, at the end of Detective Cloutier's testimony, the district court instructed the jury not to consider the informant's statement for its truth, another factor in favor of finding the error harmless. Cf. United States v. Rathbun, 98 F.4th 40, 61 (1st Cir. 2024) (finding evidentiary error to be harmless in part because district court gave limiting instruction that "cabined how the jury could consider it").

Considering each of the relevant factors, the government has established that the Confrontation Clause error here was harmless beyond a reasonable doubt. Thus, we do not disturb Soto-Sanchez's conviction.

## B. Sentencing Enhancement

Soto-Sanchez also challenges his sentence based on the district court's application of a two-point enhancement for obstruction of justice under section 3C1.1 of the Sentencing Guidelines. To recap, section 3C1.1 applies if a defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." U.S.S.G. § 3C1.1. Under the commentary, covered conduct includes "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so." Id. § 3C1.1 cmt. n.4(A).

According to Soto-Sanchez, the district court made two errors in applying the section 3C1.1 enhancement. First, he contends that, as a legal matter, the district court should not have applied the enhancement under an "unlawful[] influenc[e]" theory without determining that any "influence" independently violated federal law. Second, he claims that, as a factual matter, (i) the district court should not have applied the enhancement without finding by a preponderance of the evidence that Soto-Sanchez was offering Dostie money in exchange for her silence and (ii) the evidence was insufficient to support such a finding.

We conclude that Soto-Sanchez has waived his arguments related to the sentencing enhancement. Critically, before the

district court, Soto-Sanchez conceded that if the facts were as Dostie testified, the "provision could apply, certainly." And he pursued only two factual theories in challenging the enhancement. First, he claimed that Ortega and his cousin contacted Dostie on their own initiative, without his knowledge. Second, and alternatively, he argued that there was an innocent explanation for contacting Dostie: to provide for her financially while he was in jail. Thus, Soto-Sanchez did not raise to the district court his legal argument that there can be no unlawful influence under the enhancement without an independent violation of federal law or his factual argument that the enhancement could apply only if he had offered Dostie money for her silence. As a result, we must review both of these claims for plain error on appeal. See United States v. Sansone, 90 F.4th 1, 6 (1st Cir. 2024) ("Unpreserved claims of error, if not deemed waived, are reviewed only for plain error."). But Soto-Sanchez failed to address the plain error standard in his opening brief, and therefore he has waived both arguments entirely. See United States v. Cordero-Velázquez, 124 F.4th 44, 52 (1st Cir. 2024) (concluding that defendant's unpreserved sentencing argument was waived because he did not address the plain error standard in his opening brief (citing United States v. Melendez-Hiraldo, 82 F.4th 48, 54 (1st Cir. 2023))).

Even after the government argued in its brief that the

plain error standard applied, Soto-Sanchez failed to address the standard in his reply. Instead, he claimed that he merely "added more heft to his argument on appeal." We disagree. The record is clear that Soto-Sanchez made no statutory construction argument to the district court about the correct legal interpretation of the guideline; instead, his arguments were factual. Further, the factual arguments he made to the district court were markedly different from the factual argument that he now presses on appeal: that the court could apply the enhancement only if it found that Soto-Sanchez offered Dostie money for her silence and that the evidence was insufficient to support such a finding. Thus, Soto-Sanchez did not "favor[] the lower court with the argument that he now stitches together." <u>United States</u> v. <u>Turbides-Leonardo</u>, 468 F.3d 34, 37 (1st Cir. 2006).

In sum, we reject Soto-Sanchez's challenge to the district court's application of the sentencing enhancement in section 3C1.1.

### III. CONCLUSION

For all these reasons, we **<u>affirm</u>** Soto-Sanchez's conviction and sentence.


**- Concurring Opinion Follows -**

**BARRON, <u>Chief Judge</u>, concurring in part.** Finding the claimed Confrontation Clause violation harmless beyond a reasonable doubt, the majority rightly rejects Victor Soto-Sanchez's challenge under <u>Crawford</u> v. <u>Washington</u>, 541 U.S. 36 (2004), to his federal conviction. The majority nonetheless goes on to hold that a <u>Crawford</u> violation did occur with reference to <u>United States</u> v. <u>Maher</u>, 454 F.3d 13 (1st Cir. 2006), which the majority concludes is "squarely" on point. I write separately to explain why I cannot agree with that characterization of <u>Maher</u> and so would not venture beyond our harmless error ruling in disposing of Soto-Sanchez's constitutional claim.

In <u>Maher</u>, the defendant failed to satisfy the prejudice prong of the plain error standard in making his <u>Crawford</u> challenge. We thus had no need to determine when testimony that the government claims to have offered only for context -- and so in compliance with <u>Crawford</u> -- was in fact offered for its truth -- and so in violation of <u>Crawford</u>. <u>Id.</u> at 23.

The majority nonetheless treats <u>Maher</u> as if it, quite unnecessarily, found a <u>Crawford</u> violation. It reasons that otherwise "most of the Confrontation Clause analysis in <u>Maher</u> would have been unnecessary." The analysis to which the majority refers, however, is more naturally understood to have been offered in service of the panel's stark warning about the constitutional risks that prosecutors face under <u>Crawford</u> when they rely on patently

- 27 -

weak rationales for deeming testimony to have been offered only for context.  See id.

This more limited understanding of what the panel did in Maher comports with the fact that, so far as I am aware, it has not been our habit to give such precatory warnings when we hold that a claimed constitutional violation has in fact occurred.  The constitutional holding itself would seem to provide warning enough.  Maher's care in stating that the testimony at issue there merely "appear[ed]" to have been offered for its truth also comports with this same understanding of its holding.  Id.  So, too, does the fact that, unlike in past cases of ours, Maher did not, in rejecting the Confrontation Clause challenge under the plain error standard's prejudice prong, nonetheless make unmistakably clear its intention to hold under that standard's first prong that a Crawford violation had occurred.  See, e.g., United States v. Rodríguez-Adorno, 695 F.3d 32, 41 (1st Cir. 2012) (holding that a prosecutor's statement was "unmistakably the personal opinion of the prosecutor as to the honesty of a witness and constitute[d] improper vouching" but that "[b]ecause appellant has failed to show the requisite prejudice, this error does not justify a new trial under the plain error rubric").

Maher aside, it still may be that the government's response to Soto-Sanchez's Crawford challenge is not persuasive. Perhaps, despite the specific limiting instruction that the jury

- 28 -

received, the investigating officer's references to the substance of the informant's tip must be deemed to have been offered for their truth. Perhaps, in other words, those references may not be deemed to have been offered only to provide context for the officer's choice to focus his suspicion on Soto-Sanchez rather than the others whom his counsel repeatedly suggested at trial may have been the true offenders.

But, as the majority itself agrees, we need not decide that question to reject Soto-Sanchez's Crawford claim. I thus see no reason to depart from the general principle that we should avoid unnecessarily deciding constitutional issues. See, e.g., Bellville v. Town of Northboro, 375 F.3d 25, 30 (1st Cir. 2004). I especially see no reason to do so when the constitutional challenge before us rests on a precedent that is as readily distinguishable as Maher is.

The panel there, in addressing the government's argument that no Crawford violation occurred, described the government's "articulated justification" as "impossibly overbroad," because the panel understood that justification to be "that any statement by an informant to police which sets context for the police investigation is not offered for the truth of the statement." Maher, 454 F.3d at 22 (emphasis added). And while the panel in Maher did say that the "prosecution easily could have structured its narrative to avoid" the testimony which related the substance

of the informant's tip, including by having the officer in that case "merely [say] he 'acted upon information received, or words to that effect,'" id. at 23, the panel did so only in responding to the "impossibly overbroad" justification just described. Thus, I do not understand Maher to have addressed how to assess the kind of fact-bound context argument that the government makes in this case. Accordingly, Maher did not address, let alone purport to pass on, how we should go about determining whether, in the face of a specific limiting instruction and the defense counsel's specific opening statements, Detective Cloutier's testimony in referring to what the informant told him was offered only to provide context.

In my view, therefore, we have no reason to do more in resolving this Crawford challenge than Maher did in resolving that one. I thus think that here, as there, we should reject the challenge solely on the ground that the defendant has failed to show the requisite degree of prejudice but then warn prosecutors of the constitutional risk of their reliance on "backdoor attempts to get statements by non-testifying confidential informants before a jury." Id.

That more cautious approach would provide a useful reminder to prosecutors. But it would not break new ground that would bind future panels in our Circuit, which, unlike our own panel, may have no choice but to decide whether testimony that

- 30 -

relates to the substance of an informant's tip has been offered for its truth, rather than for its context, in the face of a limiting instruction.

There is sometimes reason, of course, to offer guidance even when it is not strictly necessary to do so. But we are best positioned to give that guidance when it concerns a matter that has been subjected to true adversarial testing. And, even then, we should be most cautious about giving it when the question is a constitutional one. Here, the parties' briefing on the Confrontation Clause issue focused on Maher and its application to the facts of Soto-Sanchez's case, as did oral argument. But we have no arguments from the parties ventilating the many complexities presented by this complicated and much-contested area of law that necessarily arise in evaluating a case-specific context argument of the kind that the government has presented to us, and which the panel in Maher did not understand itself to be addressing. I therefore respectfully decline to join Part II.A.1, supra, but otherwise concur fully in the majority's decision.